# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY CERUTTI, JAMES COFFMAN, JOHN
CONSTABILE, MATTHEW DONALDSON,
ANTHONY GEORGIANA, DONALD
MCKNIGHT, LINDA MASSUCCI, MICHAEL
MASSUCCI, SHAUN CHRISTOPHER, and
JOHN ARISON, on behalf of themselves and all
others similarly situated,

                Plaintiffs,

v.

FRITO LAY, INC.,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 09-22

Judge Joy Flowers Conti

[Complaint – Class Action]

## DEFENDANT FRITO-LAY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF RELEVANT UNDISPUTED MATERIAL FACTS ................................. 2

    A.  Frito-Lay Is A Motor Carrier Covered by the Motor Carrier Exemption ................. 2

    B.  Frito-Lay's Compensation System for RSRs Is Modeled After the Federal
        FWW Method .............................................................................................. 3

III.  SUMMARY JUDGMENT IS WARRANTED BECAUSE THERE IS NO GENUINE
     ISSUE AS TO EITHER ANY MATERIAL FACT OR AS TO THE
     LAW ................................................................................................................. 4

    A.  The Summary Judgment Standard is Met. ............................................................ 4

    B.  Plaintiffs Were Exempt From the PMWA's Overtime Requirements
        Pursuant to the Motor Carrier Exemption for the Entire Limitations Period
        of this Action. ............................................................................................... 5

        1.  SAFETEA-LU Did Not Impact the Applicability of the State
            Motor Carrier Exemption to Plaintiffs ............................................... 5

        2.  Changes to the Federal Motor Carrier Act Were Not Incorporated
            into State Law, Which Continues to Cover all Drivers, Regardless
            of Truck Weight. ............................................................................ 8

    C.  Even if Changes to the Motor Carrier Act Were Incorporated into State
        Law, the Plaintiffs Continued to Be Covered by the Exemption at all
        Times, and at Least Until a Truck Weight Requirement was Added to the
        FLSA on June 6, 2008 ...................................................................................... 9

    D.  The FWW Method of Paying Overtime, and Therefore Frito-Lay's
        Compensation System, are Lawful Under the PMWA . ......................................... 13

        1.  Frito-Lay's Compensation System Comports with the Federal
            FWW Method ................................................................................. 13

        2.  The FWW Method Is Permissible Under The PMWA. .......................... 15

IV.  CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986) ........................................................................... 4, 5

Big Apple BMW, Inc. v. BMW of N. Am., Inc.
974 F.2d 1358 (3d Cir. 1992) .................................................................. 4

Celotex Corp. v. Catrett
477 U.S. 317 (1986) .............................................................................. 4

Collins v. Heritage Wine Cellars, Ltd.
2008 WL 5423550 (N.D. Ill. Dec. 29, 2008) ......................................... 11

Collins v. Heritage Wine Cellars, Ltd.
598 F.3d 895 (7th Cir. 2009) ................................................................. 10

Evans v. Lowe's Companies, Inc.
Civil Action No. 3:03-cv-0438, 2004 U.S. Dist. LEXIS 8335
(M.D. Pa. April 29, 2004) ................................................................. 15, 17

Appeal of Free
151 A. 583 (Pa. 1930) ........................................................................... 8

Friedrich v. U.S. Computer Systems, Inc.
Civil Action No. 90-1615, 1996 U.S. Dist. LEXIS 775 (E.D. Pa. Jan. 23, 1996) ...... 15, 16, 17

Kendall v. U.S.
37 U.S. 524 (1838) ................................................................................ 8

Lance v. Scotts Lawn Service, Inc.
Case No. 04-5270, 2005 U.S. Dist. LEXIS 14949 (N.D. Ill. July 21, 2005) .......... 14

Martin v. Allegheny Airlines, Inc.
126 F.Supp.2d 809 (M.D. Pa. 2000) ...................................................... 4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574 (1986) .............................................................................. 5

Mayan v. Rydbom Express Inc.
Case No. 07-2658, 15 WH Cases 2d 1158 (E.D. Pa Sept. 30, 2009) ............... 11, 12

McGreevy v. Stroup
    413 F.3d 359 (3d Cir. 2005) ....................................................................... 4, 5

McKinney v. Foster
    137 A.2d 502 (Pa. 1958) ................................................................................ 8

Perez v. Radioshack Corp.
    Case No. 02-cv-7884, 2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005) ................... 14

Tews v. Renzenberger, Inc.
    592 F. Supp. 2d 1331 (D. Kansas 2009) ....................................................... 11

Tidd v. Adecco USA, Inc.
    2008 WL 4286512 (D. Mass. Sept. 17, 2008) ............................................. 11, 12

Statutes

43 P.S.
    § 333.101 et seq ............................................................................................. 1
    § 333.104(c) ................................................................................................. 13
    § 333.105(b)(7) ....................................................................................... 1, 5, 8

29 U.S.C.
    § 207 ......................................................................................................... 5, 7
    § 213(b)(1) .................................................................................................... 5

49 U.S.C.
    § 3102(b)(1) and (2) ................................................................................... 6, 9
    § 10102 ......................................................................................................... 9
    § 10102(13)-(16) (1990) .............................................................................. 9
    § 13102 ........................................................................................... 6, 7, 9, 10
    § 31132(1)(A) ............................................................................................... 9
    § 31502 ........................................................................................ 5, 6, 10, 12

Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users
    ("SAFETEA-LU") Pub. L. No. 109-59, 119 Stat. 1144 ............................... 6

SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572
    ("TCA") ..................................................................................... 7, 8, 9, 10, 12

Other Authorities

29 C.F.R.
    § 778.114 .............................................................................. 2, 3, 13, 14, 19
    § 778.118 ..................................................................................................... 14
    § 778.119 ..................................................................................................... 14

34 Pa. Code

  § 231.41 ............................................................................................................... 5

  § 231.43 ............................................................................... 13, 15, 16, 17

1990 Pa. Legis. Serv. 1990-79, § 2 ............................................................................. 9

2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION

  § 51:8 (7th ed. 2008) ............................................................................................... 8

Fed. R. Civ. P. 56(c) ..................................................................................................... 4

H.R. Rep. No. 109-203 (2005) .................................................................................... 7

## I.   **INTRODUCTION**

Defendant Frito-Lay, Inc. ("Frito-Lay") submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment with respect to Plaintiffs' claims for overtime under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 et seq. ("PMWA").

Plaintiffs assert that as Route Sales Representatives ("RSRs") for Frito-Lay, they regularly worked in excess of forty hours per week and, thus, are entitled to overtime pursuant to the PMWA.[1]

Frito-Lay is entitled to partial summary judgment on these claims for three reasons:

(1)  All Plaintiffs were exempt from overtime under the PMWA by virtue of the exemption for employees of motor carriers contained in 43 P.S. § 333.105(b)(7) ("Motor Carrier Exemption") for the entire pendency of this action.  Subsequent amendments to the federal Motor Carrier Act of 1935 did not affect the Pennsylvania Motor Carrier Exemption, which incorporated the relevant provision of the Motor Carrier Act at the time the state law was enacted.  At the time the PMWA was enacted, the Motor Carrier Act had no truck weight requirement and therefore the PMWA Motor Carrier Exemption covered all Plaintiffs.[2]

(2)  Even if this argument is rejected, all Plaintiffs were properly classified as exempt under the Pennsylvania Motor Carrier Exemption for the entire limitations period, because even after SAFETEA-LU changed the definition of motor carrier in the Motor Carrier Act, Frito-Lay remained a motor carrier utilizing trucks with Gross Vehicle Weight Ratings ("GVWRs") of at least 10,001 pounds.  Further, even if the Pennsylvania Motor Carrier

---

[1]      Plaintiffs allege claims on behalf of themselves and other similarly situated employees. However, a class has not been certified and at this time only the ten Named Plaintiffs ("Plaintiffs") are before the Court.

[2]      One of the Named Plaintiffs, Nancy Cerutti, was covered by the federal Motor Carrier Exemption, and therefore was unquestionably covered by the Pennsylvania Motor Carrier Exemption, for the entire limitations period of this action.

Exemption were found to be at all times co-extensive with the federal Motor Carrier Exemption, this exemption did not incorporate a truck weight requirement until June 6, 2008.[3]

        (3) Plaintiffs were properly compensated under the PMWA because notwithstanding their exempt status, Frito-Lay voluntarily pays overtime to RSRs for hours worked over 40 in a workweek. Frito-Lay uses the fluctuating workweek method of calculating overtime ("FWW method") found at 29 C.F.R. § 778.114. This method has been approved by the only two courts to consider whether the FWW method is permitted by Pennsylvania law, and the Pennsylvania Department of Labor and Industry has predicted the FWW will be permitted under state law. There is no contrary authority.

## II.   <u>SUMMARY OF RELEVANT UNDISPUTED MATERIAL FACTS</u>

        Although the questions before the Court are legal in nature, a brief background regarding Frito-Lay's driving operations, and its compensation system for RSRs, will give these questions context.[4]

### A.   <u>Frito-Lay Is A Motor Carrier Covered by the Motor Carrier Exemption</u>

        Frito-Lay is an international snack food manufacturing and sales company that is engaged in the manufacturing, sales, and distribution of snack food products, such as Cheetos, Fritos, and Lay's Classic potato chips, across the United States, Canada and Mexico. <u>See</u> SMF ¶ 1.[5] Frito-

---

[3]    Between April 21, 2006 and June 6, 2008, Frito-Lay's fleet was made up of some trucks with GWVRs of 10,001 pounds or greater, and some trucks under 10,001 pounds GVWR.

[4]    The Parties have agreed to bring these purely legal issues before the Court. By doing so, Frito-Lay is not waiving its right to submit evidence and argument on any factual issues, including that the requirements of the Pennsylvania Motor Carrier Exemption and the FWW method have been satisfied, and Plaintiffs are not waiving their right to submit evidence and argument on any factual issues, including that they are not, should this become relevant at another juncture in the case. However, any such evidence or argument is not relevant for purposes of the instant Motion.

[5]    Support for the factual statements herein are contained in Defendant's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment ("SMF"), filed herewith, which, in turn, contains citations to the record. Relevant

Lay sells and delivers its products to customers in Pennsylvania primarily through its RSRs. See SMF ¶ 3. At all relevant times, some RSRs have driven trucks with Gross Vehicle Weight Ratings "GVWRs" under 10,001 pounds, and some RSRs have driven trucks with GVWRs of 10,001 pounds or more. See SMF ¶ 6. Nine of the Plaintiffs fall into the first category, and one falls into the latter category. It is undisputed that the Pennsylvania Motor Carrier Exemption applied to the Plaintiff who drove the truck with a GVWR of at least 10,001 pounds. Frito-Lay contends that it also applied to the other nine Plaintiffs for the entire limitations period, and at the very least until June 6, 2008; Plaintiffs disagree.

**B.**     **Frito-Lay's Compensation System for RSRs Is Modeled After the Federal FWW Method**

Pursuant to a Collective Bargaining Agreement ("CBA") negotiated between the union representing the RSRs and Frito-Lay, Frito-Lay compensated Plaintiffs through a base salary and commissions on sales of snack products. See SMF ¶ 4. Plaintiffs were also entitled to overtime compensation under the CBA for any hours worked over 40 in a workweek. Frito-Lay pays overtime using the FWW method found at 29 C.F.R. § 778.114.

Frito-Lay's RSR Handbook explains the RSR compensation system as follows:

> Any week in which you work more than forty (40) hours, you will receive, in addition to your base salary, extra pay for overtime hours. This overtime is calculated as follows:

| Base Salary + any Commissions | = | TOTAL WEEKLY COMPENSATION |
|---|---|---|
| Divide Total Weekly Compensation by total hours worked for that week | = | HOURLY RATE OF PAY |
| Take Hourly Rate of Pay, multiply this number by .5, then multiply by the number of overtime hours. | = | OVERTIME PAID FOR THAT WEEK |

---

portions of the evidentiary record are contained in Defendant's Appendix of Record Materials in Support of its Motion for Partial Summary Judgment.

See SMF ¶ 5.

## III. SUMMARY JUDGMENT IS WARRANTED BECAUSE THERE IS NO GENUINE ISSUE AS TO EITHER ANY MATERIAL FACT OR AS TO THE LAW

A review of the relevant facts and law shows there is no genuine dispute as to either. The facts are undisputed; the law is clear that the Pennsylvania Motor Carrier Exemption applied to Plaintiffs at the very least until June 6, 2008, if not for the entire limitations period; and all available authority approves the use of the FWW method in Pennsylvania.

### A.     The Summary Judgment Standard is Met.

Summary judgment is warranted where the pleadings, depositions, and discovery responses, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact such that a reasonable jury could return a verdict for the non-moving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). See also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

A factual dispute is "material" if it might affect the outcome of the suit under applicable law. A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Martin v. Allegheny Airlines, Inc., 126 F.Supp.2d 809, 814 (M.D. Pa. 2000). In determining whether the dispute is genuine, the court's function is not to weigh the evidence to determine the truth of the matter, or to evaluate credibility. Rather, the court must only determine whether the evidence contained in the record

is such that a reasonable jury could return a verdict for the non-moving party. <u>McGreevy</u>, 413 F.3d at 363. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Once the moving party demonstrates the absence of a genuine issue involving any material facts, the burden shifts to the non-moving party to present affirmative evidence in order to defeat a properly-supported motion for summary judgment. <u>Id.</u> at 257. If the adverse party cannot present specific facts showing that there is a genuine issue for trial, summary judgment must be entered. <u>Id.</u> at 250.

**B.** **Plaintiffs Were Exempt From the PMWA's Overtime Requirements Pursuant to the Motor Carrier Exemption for the Entire Limitations Period of this Action.**

Recent changes to the federal Motor Carrier Act have been confusing. However, a review of those changes and their interaction with Pennsylvania law reveals that they had no impact on the applicability of the Pennsylvania Motor Carrier Exemption to Plaintiffs.

1. SAFETEA-LU Did Not Impact the Applicability of the State Motor Carrier Exemption to Plaintiffs

Both the federal Fair Labor Standards Act ("FLSA") and the PMWA require an employer to pay overtime to employees for hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1); 34 Pa. Code § 231.41. However, this rule is subject to various exceptions. One such exception is the Motor Carrier Exemption, which provides: "The provisions of section 207 of this title shall not apply with respect to . . . any employee with respect to whom the [Federal] Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 . . . ." 29 U.S.C. § 213(b)(1). Pursuant to 49 U.S.C. § 31502(b)(1), the Secretary of Transportation is authorized to establish qualifications and maximum hours of service for "employees . . . of a motor carrier." The PMWA's Motor Carrier Exemption is found at 43 P.S. § 333.105(b)(7), and likewise exempts from the PMWA's

overtime requirements "[a]ny employee of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. § 3102(b)(1) and (2)."[6] Thus, "employees" of a "motor carrier" are exempt from the overtime provisions of both the FLSA and PMWA.

Prior to August 10, 2005, a "motor carrier" included any business or entity that transported property in interstate commerce for compensation by vehicle, regardless of vehicle weight. On August 10, 2005, Congress enacted into law the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), which altered the definition of the term "motor carrier." Pub. L. No. 109-59, 119 Stat. 1144. Under the revised definition, a "motor carrier" was a person providing transportation by use of a *commercial motor vehicle*." 49 U.S.C. § 13102 (emphasis added). The term "commercial motor vehicle" was defined, in turn, as: "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle . . . has a gross weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater . . . ." Id. § 31132(1)(A).

Thus, prior to the enactment of SAFETEA-LU on August 10, 2005, there was no weight requirement for qualification as a "motor carrier" under the Motor Carrier Act, but after that date, an entity had to use 10,001 pound GVWR vehicles in transportation to be a motor carrier. Nevertheless, despite this distinction, both prior to and after the enactment of SAFETEA-LU, a driver "employee" of a "motor carrier" was exempt from the FLSA's (and the PMWA's) overtime provisions. The only difference between the pre- and post-SAFETEA-LU exemption was which **employers** qualified as "motor carriers" (i.e., after August 10, 2005, only those employers using vehicles weighing more than 10,001 pounds). SAFETEA-LU did not change or alter the term **"employees"** under 49 U.S.C. § 31502 in any way. In other words, any employee driver of a

---

[6] Former section 3102 is currently codified at section 31502.

motor carrier would be exempt, whether or not that particular employee's truck was over 10,001 pounds GVWR.[7]

There were further changes.  On June 6, 2008, Congress enacted the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 ("TCA").  Section 305(c) of the SAFETEA-LU TCA states, in relevant part:

> DEFINITIONS RELATING TO MOTOR CARRIERS – Paragraphs (6)(B), (7)(B), (14) and (15) of section 13102 of such title are each amended by striking "commercial motor vehicle (as defined in section 31132)" and inserting "motor vehicle." Id. § 305(c).

In short, the TCA restored the definition of "motor carrier" to its pre-SAFETEA-LU state.  Once again, a "motor carrier" was defined without reference to any "commercial" requirements,  meaning no weight requirement attached.  49 U.S.C. § 13102.

While it restored the "motor carrier" definition to its pre-August 10, 2005 state, Congress also used the TCA to create a new category of overtime recipients, referred to as "covered employees."  These employees are defined in Section 306 of the TCA, titled "Applicability of Fair Labor Standards Act Requirements and Limitations on Liability," which adds a note to 29 U.S.C. section 207 as follows:

> APPLICABILITY FOLLOWING THIS ACT – Beginning on the date of enactment of this Act [i.e., June 6, 2008], section 7 of the [FLSA] shall apply to a *covered employee* notwithstanding section 13(b)(1) of that Act (29 U.S.C. § 213(b)(1)). Id. § 306(a) (emphasis added.)

The FLSA note created by the TCA also defines "covered employee" as an individual –

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);

---

[7]    According to relevant legislative history, the purpose of the change was **not** to narrow the Motor Carrier Exemption.  Rather, the purpose of SAFETEA-LU was to "harmonize[] the jurisdictional reach of the commercial and safety statutes by eliminating the requirement for motor carriers to register if they are not subject to the Federal motor carrier safety regulations." H.R. Rep. No. 109-203 at Sec. 4142 (2005).  SAFETEA-LU's impact on the Motor Carrier Exemption was an unintended consequence.

(2) whose work, in whole or in part, is defined –

    (A) as that of a driver, driver's helper, loader, or mechanic; and

    (B) as affecting the safety of operation of motor vehicles weighing 10,000 or less in transportation on public highways in interstate or foreign commerce . . .; and

    (C) who performs duties on motor vehicles weighing 10,000 pounds or less. Id. § 306(c).

Thus, starting on June 6, 2008, an individual employed by a motor carrier may be entitled to overtime wages under the FLSA if he or she can establish his or her status as a "covered employee." This includes employees who drive trucks with GVWRs under 10,001 pounds. The Motor Carrier Exemption in the PMWA, however, does not incorporate the exemption in the FLSA. It incorporates the Motor Carrier Act directly. See 43 P.S. § 333.105(b)(7). Therefore, the portion of the TCA relating to the federal Motor Carrier Exemption is irrelevant to the Pennsylvania exemption.

    2.    <u>Changes to the Federal Motor Carrier Act Were Not Incorporated into State Law, Which Continues to Cover all Drivers, Regardless of Truck Weight.</u>

The above changes to the Motor Carrier Act and FLSA were confusing, to say the least. However, they are irrelevant to the applicability of the Pennsylvania Motor Carrier Exemption. Pennsylvania's Supreme Court has unequivocally stated that, where a specific statutory provision is incorporated into legislation, it is understood to incorporate the cited provision **at the time the legislation is passed, without subsequent amendments**. See Appeal of Free, 151 A. 583, 584 (Pa. 1930) ("If a statute specifically adopts a . . . particular provision[] of a former statute . . . such statute or particular provision[] thereof becomes a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act; but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or clearly implied."); McKinney v. Foster, 137 A.2d 502, 506 (Pa. 1958); see also 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51:8 (7th ed. 2008); Kendall v. U.S., 37 U.S. 524, 625 (1838) (adoption of another statutory provision

by reference into legislation is "considered as referring to the law existing at the time of adoption; and no subsequent legislation has ever been supposed to affect it.").

Pennsylvania passed its Motor Carrier Exemption in 1990, incorporating 49 U.S.C. § 3102(b)(1) and (b)(2) – as they existed at that time. See 1990 Pa. Legis. Serv. 1990-79, § 2 (exempting from overtime "[a]ny employee of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. § 3102(b)(1) and (2)…"). In 1990, the Motor Carrier Act stated that the Secretary of Transportation had the power to regulate "motor carriers" and "motor private carriers," which the Act in turn defined in a manner that did not involve commercial motor vehicles and was therefore not conditioned on truck weight. 49 U.S.C. §§ 3102(b)(2), 10102(13)-(16) (1990).[8] As such, any amendments to the federal Motor Carrier Act made after 1990 to change the definitions of motor carriers and motor private carriers - including SAFETEA-LU and SAFETEA-LU TCA - do not affect the scope of Pennsylvania's Motor Carrier Exemption. Therefore, regardless of truck weight, Plaintiffs were consequently not entitled to **any** overtime under the PMWA during the putative class period, because they were exempt.

**C.** **Even if Changes to the Motor Carrier Act Were Incorporated into State Law, the Plaintiffs Continued to Be Covered by the Exemption at all Times, and at Least Until a Truck Weight Requirement was Added to the FLSA on June 6, 2008.**

The only change made by SAFETEA-LU relevant to this case was the change in definition of "motor carrier" under 49 U.S.C. § 13102. As explained above, SAFETEA-LU changed the definition of "motor carrier" by adding the word "commercial" before "motor vehicle." Section 31132(a), in turn, defines "commercial motor vehicle" as including only those vehicles with GVWRs of at least 10,001 pounds. 49 U.S.C. § 31132(1)(A). Together, this means that post-SAFETEA-LU, a "motor carrier" is a carrier moving in interstate commerce, for

---

[8]        Former section 10102 is currently codified at section 13102.

compensation, with the use of a vehicle with a GVWR of at least 10,001 pounds.  However, SAFETEA-LU's revised definition of "motor carrier" did not require a company to operate **only** "commercial motor vehicles" to qualify as a "motor carrier."  It simply required that the company use a commercial motor vehicle.  49 U.S.C. § 13102.

Thus, notwithstanding SAFETEA-LU's revisions, a company that provided **any** transportation using commercial motor vehicles (those with GVWRs of at least 10,001 pounds) remained a "motor carrier" within the meaning of § 31502, even if the company also provided some transportation using non-commercial motor vehicles (those with GVWRs under 10,001 pounds).  Likewise, the revised definition of "motor carrier" did not change a company's status as a motor carrier based on the weight of the vehicle driven by a particular employee.  **Nothing in the revised definition supports the idea that the same company could be a "motor carrier" within the meaning of 49 U.S.C. § 31502 as to one employee, but not a "motor carrier" within the meaning of the same statute with respect to a different employee.**  As explained by the court in <u>Collins v. Heritage Wine Cellars, Ltd.</u>, 598 F.3d 895, 901 (7th Cir. 2009):

> Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

Thus, even if the changes made by SAFETEA-LU applied to the PMWA, Plaintiffs were still covered by the PMWA's Motor Carrier Exemption, because Frito-Lay remained a "motor carrier" using "commercial motor vehicles" with GVWRs over 10,000 pounds.

Further, even if one were to assume the Pennsylvania Motor Carrier Exemption would be interpreted the same as the federal Motor Carrier Exemption, as opposed to in accordance with its plain language, the earliest possible change to the applicability of the exemption would be June 6, 2008.  As noted above, that is the date the SAFETEA-LU TCA redefined the federal Motor Carrier Exemption to exclude drivers of vehicles with GVWRs under 10,001 pounds.

However, courts that have decided whether a company that used both motor vehicles (those with GVWRs under 10,0001 pounds) and commercial motor vehicles (those with GVWRs of at least 10,001 pounds), in interstate commerce, for compensation, between August 10, 2005 and June 6, 2008, were "motor carriers" for purposes of the Motor Carrier Exemption, have ruled in favor of the employer. See Mayan v. Rydbom Express Inc., Case No. 07-2658, 15 WH Cases 2d 1158 (E.D. Pa Sept. 30, 2009); Tidd v. Adecco USA, Inc., 2008 WL 4286512, at *1-4 (D. Mass. Sept. 17, 2008); Collins v. Heritage Wine Cellars, Ltd., 2008 WL 5423550 at *19-20 (N.D. Ill. Dec. 29, 2008) ("The [SAFETEA-LU] amendments were plainly directed at defining the motor carrier. . . ."). But see Tews v. Renzenberger, Inc., 592 F. Supp. 2d 1331, 1344 (D. Kansas 2009).

In Mayan v. Rydbom Express Inc., a Pennsylvania District Court case, a group of delivery drivers alleged their employer failed to pay them overtime compensation in violation of the FLSA and the PMWA. The employer had a fleet of approximately 100 delivery trucks – about one-third had GVWRs of at least 10,001 pounds; the remainder were below 10,001 pounds. The only question before the court was whether SAFETEA-LU altered which class of motor carrier employees were properly categorized as exempt under the Motor Carrier Exemption. The court held it did not, stating, "I find as a matter of law that the plaintiffs were subject to the Secretary of Transportation's authority both prior to and following the enactment of the SAFETEA-LU amendments and were not entitled to any overtime. . . ." As such, the plaintiffs continued to be covered by the Motor Carrier Exemption post- SAFETEA-LU regardless of the size of the trucks they drove, and therefore were not entitled to any overtime under either the FLSA **or** the PMWA.

Similarly, in Tidd v. Adecco USA, Inc., the district court granted FedEx Ground Package System, Inc.'s motion for summary judgment and dismissed the plaintiffs' claims for overtime compensation under the FLSA and applicable state law. Like Frito-Lay, FedEx operated vehicles of varying sizes and weights to transport property in interstate commerce. Id. at *8. Also like Frito-Lay, some FedEx employees drove vehicles weighing at least 10,001 pounds

("commercial motor vehicles" under SAFETEA-LU) and some drove vehicles weighing less than 10,001 pounds ("non-commercial vehicles" under SAFETEA-LU). Tidd, 2008 WL at *11. FedEx moved for summary judgment on the grounds that, even after the enactment of SAFETEA-LU, it remained a "motor carrier" and its drivers remained "employees" covered by the Motor Carrier Exemption. The plaintiffs argued that FedEx should only be treated as a "motor carrier" to the extent it operated motor vehicles weighing at least 10,001 pounds, and that it should not be treated as a "motor carrier" to the extent it operated vehicles weighing less. Id. at *8.

The court found the plaintiffs' argument untenable because companies like FedEx (and Frito-Lay) cannot be treated as "motor carriers" under some circumstances, but not others. FedEx's fleet of vehicles included commercial motor vehicles and, thus, FedEx was a "motor carrier" under SAFETEA-LU's definition of the term. Id. at *8-9. Moreover, the plaintiffs in Tidd were found to be "employees" under 49 U.S.C. § 31502, regardless of the weight of the truck they personally drove. Accordingly, the court granted FedEx's motion for summary judgment and dismissed the plaintiffs' claims for overtime wages.

The facts and arguments in Mayan and Tidd are virtually indistinguishable from the instant case, and the court's reasoning in those cases should be afforded substantial weight. Further, a ruling contrary to Mayan would impose inconsistent liability on employers within the state of Pennsylvania.

Note further that the SAFETEA-LU TCA also restored the definition of "motor carrier" to its pre-SAFETEA-LU state. To the extent the PMWA incorporated this definition, post-TCA there was again no question the PMWA's Motor Carrier Exemption applied, regardless of whether the employer had **any** trucks with GVWRs of 10,001 pounds or greater. Accordingly, this Court should issue a ruling that the Pennsylvania Motor Carrier Exemption continued to apply regardless of truck weight at all times, and at least until June 6, 2008.

**D.**     **The FWW Method of Paying Overtime, and Therefore Frito-Lay's Compensation System, are Lawful Under the PMWA .**

Even if Plaintiffs were found to be non-exempt employees under the PMWA for all or part of the limitations period, Plaintiffs were properly compensated for all overtime hours worked.  The PMWA requires employers to pay non-exempt employees an overtime premium of "not less than one and one-half times the employee's regular rate" for all hours worked in excess of forty hours in a workweek.  43 P.S. § 333.104(c).  Case law and administrative authority make clear that Frito-Lay's FWW compensation system satisfies the requirements of the PMWA regulation set forth at 34 Pa. Code section 231.43(d) and therefore satisfies Pennsylvania's overtime requirements.

1.     Frito-Lay's Compensation System Comports with the Federal FWW Method.

Plaintiffs receive a salary plus commissions.  To calculate overtime on the salary portion, Frito-Lay follows federal regulation 29 C.F.R. § 778.114, or the FWW method.  The FWW method was promulgated by the U.S. Department of Labor ("DOL") as an alternative method of calculating overtime on a salary that complies with the federal FLSA.[9]  The FWW method is utilized by employers in nearly every state, including employers across Pennsylvania.

Under the FWW method, an employee's "regular rate" for purposes of calculating overtime fluctuates on a weekly basis because it is based on the total number of hours worked

---

[9]     29 C.F.R. § 778.114(a) states, in part,

An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.  Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

during the workweek, as opposed to the standard forty hours. Dividing the weekly salary by the total number of hours worked results in a "regular rate" that is considered the straight-time compensation for all hours worked during the week. An employee's overtime rate is then calculated by dividing the "regular rate" in half. This results in a premium rate that the employee receives for all hours worked over forty. The FWW method complies with the FLSA's overtime requirement because the employee's weekly salary is intended to compensate him for all hours worked in a workweek – overtime hours included. Thus, the employee receives the "time" for each hour worked by receiving a weekly salary. As such, he or she is only entitled to the "and a half" of his or her regular rate for hours worked in excess of forty.[10]

For non-exempt employees who receive commissions on a weekly basis, the federal regulations require that commissions be added to the employee's other earnings for that week for purposes of determining the employee's regular rate. 29 C.F.R. §§ 778.118, 778.119. These regulations have been applied to employers using the FWW method. Lance v. Scotts Lawn Service, Inc., Case No. 04-5270, 2005 U.S. Dist. LEXIS 14949, *18 (N.D. Ill. July 21, 2005) (rejecting plaintiff's argument that commissions are not included in determining an employee's regular rate under the FWW method); Perez v. Radioshack Corp., Case No. 02-cv-7884, 2005 U.S. Dist. LEXIS 33420, *18-19 (N.D. Ill. Dec. 14, 2005) (same). Thus, to properly calculate overtime, an RSR's base salary and any commissions attributable to that week must be included in calculating the regular rate.

---

[10]     29 C.F.R. § 778.114(a) states, in part,

　　　　Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

This is precisely what Frito-Lay does to arrive at the regular hourly rate for determining overtime pay under the FWW method. Thus, Frito-Lay's overtime formula including both an RSR's base salary and commissions is consistent with the FWW method.

2.    <u>The FWW Method Is Permissible Under The PMWA.</u>

The only two cases to consider the issue have held that the PMWA permits the use of the FWW method. 34 Pa. Code section 231.43(d) provides that an employer shall be deemed to *not* have violated the overtime provisions of the PMWA if:

> Under an agreement or understanding arrived at between the employer and employee before performance of the work, the amount paid to the employee for [overtime] . . .
>
> (3) is computed at a rate not less than 1 ½ times the rate established by the agreement or understanding as the basic rate to be used in computing overtime compensation thereunder.

Two federal district courts in Pennsylvania have found that this provision allows the use of the FWW method in Pennsylvania. <u>Evans v. Lowe's Companies, Inc.</u>, Civil Action No. 3:03-cv-0438, 2004 U.S. Dist. LEXIS 8335 (M.D. Pa. April 29, 2004); <u>Friedrich v. U.S. Computer Systems, Inc.</u>, Civil Action No. 90-1615, 1996 U.S. Dist. LEXIS 775 (E.D. Pa. Jan. 23, 1996). In addition, Pennsylvania's Labor Law Compliance Division ("LLCD") has issued an opinion letter based on the prediction that the PMWA permits the use of the FWW method.

In <u>Friedrich v. U.S. Computer Systems, Inc.</u>, the employer paid employees a bi-weekly salary and compensated them for any hours worked in excess of forty in a workweek using a variable overtime rate. The variable overtime rate was calculated by dividing the employee's weekly salary by the number of hours worked that week and then dividing the resulting hourly rate in ½. **It was undisputed that the employer's overtime compensation plan, which was**

**modeled after the FWW method, complied with the substance of Section 231.43(d).**
Friedrich, 1996 U.S. Dist. LEXIS at *28. The court focused on whether the employees
"understood or agreed" to the employer's compensation plan and its method of computing
overtime, as is required by Section 231.43(d). The court held that, because the employees had
the requisite understanding, the employer had not violated the PMWA by using a compensation
plan modeled after the FWW method.

Prior to finding that the employer's compensation system complied with Section
231.43(d), the court analyzed the employer's compensation plan under subsection (b) of the same
regulation. Plaintiff may attempt to assert Friedrich as support for the argument that the FWW
method is not permissible in Pennsylvania because the court held that subsection (b) was not
applicable. Subsection (b) expressly permits the use of the FWW method for employees "paid a
flat sum for a day's work" or "for doing a particular job without regard to the number of hours
worked."[11] The court held subsection (b) did not apply because the subsection encompasses
only "employees who perform duties as independent contractors, working on specific, discrete
projects such as painting, construction, or other services." Since the employees in Friedrich did
not perform this type of work, the court ruled that subsection (b) was inapplicable to the
employer's compensation plan.

However, in order to be in compliance with the PMWA, an employer must comply with
*either* subsection (b) or subsection (d), but not both. Because the employer in Friedrich
complied with subsection (d) (as does Frito-Lay), it is irrelevant whether they also comply with

---

[11] Specifically, Section 231.43(b) provides,

[i]f an employee is paid a flat sum for a day's work or for doing a particular job
without regard to the number of hours worked in the day or on the job, and if he receives
not other form of compensation for his services, his regular rate is determined by totaling
all of the sums he received at such day rates or job rates in the workweek, and then
dividing by the total hours actually worked. He is then entitled to half-time pay at this
rate for all hours worked in excess of forty in the workweek.

subsection (b). Thus, any argument by Plaintiffs that <u>Friedrich</u> does not permit the FWW method misstates the conclusions reached by the court.

The other district court case to have analyzed an employer's use of the FWW method in Pennsylvania, <u>Evans v. Lowe's Companies, Inc.</u>, also looked at the employer's compensation plan and whether it fell within the overtime liability exception enumerated in Section 231.43(d). Although the court ultimately denied the employer's motion for summary judgment, the court did not take issue with the fact that the employer was paying overtime compensation under a "Salaried Plus Overtime Plan," which was modeled after the FWW method. In determining whether issues of fact existed for purposes of summary judgment, the court looked only at whether the employer had satisfied Section 231.43(d)'s requirement that it have an "agreement or understanding" with employees to use an alternative compensation plan. Due to conflicting evidence, the court held issues of fact existed and denied summary judgment.

Whether the Plaintiffs had the requisite understanding is not before this Court. [12] The only issue before the Court regarding the FWW method is whether Pennsylvania law allows it. The only two cases two consider this issue held that the PMWA, specifically Section 231.43(d), does allow it.

Moreover, Pennsylvania's LLCD has issued an opinion letter predicting that the Pennsylvania state courts will approve the use of the FWW method.[13] The LLCD is the division of the Department of Labor & Industry that interprets and enforces Pennsylvania's laws regulating the employer and employee relationship.

Thus, courts and administrative agencies in Pennsylvania that have opined on the issue of whether the FWW method is a permissible method of calculating overtime have **uniformly upheld its use.** There are no contrary state or federal court opinions. Accordingly, the argument

---

[12]     Similarly, the issue of whether the FWW method was properly implemented, or whether improper deductions were taken, is also not before the Court.

[13]     A copy of LLCD letter dated February 26, 2003 is attached hereto as Exhibit "1".

that the FWW method is not permissible in Pennsylvania holds no weight, and the Court should issue a ruling that Pennsylvania law permits the use of the FWW method.

## IV.    **CONCLUSION**

Plaintiffs were exempt from the PMWA overtime requirements by virtue of the PMWA's Motor Carrier Exemption for the entire limitations period of this action, or at least through June 6, 2008. Even if they are found not to be exempt throughout the entire limitations period, Frito-Lay's overtime compensation system, modeled on the federal FWW method, satisfies Pennsylvania overtime requirements. Therefore, Frito-Lay respectfully requests that this Court grant its Motion for Partial Summary Judgment and enter an Order that:

(1)  The Pennsylvania Motor Carrier Exemption does **not** incorporate amendments to the federal Motor Carrier Act made subsequent to the time the federal law was incorporated into Pennsylvania law, and consequently there is no truck weight requirement for the Pennsylvania exemption to apply.

**or**

(2)  To the extent the Pennsylvania Motor Carrier Exemption **does** incorporate amendments to the federal Motor Carrier Act made subsequent to the time the federal law was incorporated into Pennsylvania law, drivers for companies whose fleets included trucks with GVWRs both over and under 10,001 pounds continued to qualify for the exemption at all times, or at the very earliest an individual truck weight requirement did not apply until June 6, 2008.

**and**

(3)  The FWW method of calculating overtime set forth in 29 C.F.R. § 778.114 is lawful in Pennsylvania.

Dated:  July 30, 2010

SHEPPARD MULLIN RICHTER & HAMPTON, LLP


By      */s/ Samantha Hardy*
        Guy N. Halgren, Esq.
        Samantha D. Hardy, Esq.
        Rachel A. Miller, Esq.
        Ashley T. Hirano, Esq.

        (All attorneys admitted *pro hac vice*)

        Attorneys for Defendant.

# EXHIBIT 1

  




DEPUTY CHIEF COUNSEL
OFFICE OF CHIEF COUNSEL
LABOR LAW COMPLIANCE DIVISION
10TH FLOOR, LABOR & INDUSTRY BUILDING
SEVENTH AND FORSTER STREETS
HARRISBURG, PA 17120

GOVERNOR'S OFFICE OF
GENERAL COUNSEL

717-787-4186   Fax: 717-783-5027  www.dli.state.pa.us



**LABOR & INDUSTRY**
COMMONWEALTH OF PENNSYLVANIA

February 26, 2003



Mark A. Sereni, Esquire
DIORIO & SERENI, LLP
P.O. Box 1789
Media, PA 19063

RE: *Signora v. Liberty Travel, et al.*
Delaware County, C.C.P., No. 95-7834

Dear Mr. Sereni:



On behalf of the Department of Labor and Industry, Office of Chief Counsel, I represent Deputy Chief Counsel Richard Lengler and Investigation Supervisor Joseph Hickey concerning the depositions and other matters relating to this case. I received copies of the subpoenas that you served for the March 11, 2003 depositions. I appreciate that you contacted me in advance, provided these copies to me and that you also considered Mr. Lengler's schedule.

The legal relevancy, necessity and benefit of these depositions are highly questionable because the Department never adjudicated, prosecuted or issued a legally-binding statement on this issue. Further, Mr. Lengler and Mr. Hickey may not be compelled to testify as expert witnesses. The scope of your request is also unreasonably broad. Moreover, you requested documents and testimony that undoubtedly violate the attorney client privilege, the attorney work product rule, and the deliberative process privilege, among other privileges. If these issues, particularly the privilege issues, are not satisfactorily addressed, the Department of Labor and Industry will seek to quash the subpoenas or move for protective orders under Pa. R.C.P. 234.4(b), 4003.1, 4003.3, 4011; 4012.



Apparently, Mr. Lengler and Mr. Hickey are being deposed because they were listed as expert witnesses in this case. Neither Mr. Lengler nor Mr. Hickey consented to being expert witnesses and the Department objects to these Commonwealth employees testifying as witnesses at any proceeding. Use of these Commonwealth employees, as expert witnesses, may also be opposed because it is an unreasonable use of a

001876

Commonwealth employee for a private cause of action. *See Jistarri v. Nappi*, 549 A.2d 210 (Pa. Super. 1988); Governor's Code of Conduct, 4 Pa. Code § 7.152.

The depositions apparently pertain to Mr. Lengler's November 12, 1998 letter to Judith E. Harris, Esquire containing an interpretation of minimum wages issues and the concept of *fluctuating workweek*. Mr. Hickey sent a letter to Ms. Harris on March 16, 1999 containing the assertion that Liberty Travel would owe no money for overtime if Pennsylvania recognized a *fluctuating workweek*. However, there was no official publication or binding norm concerning this issue in any Department document, the *Pennsylvania Code* or the *Pennsylvania Bulletin*. Commonwealth Documents Law, 45 Pa. C.S. §§ 501-609, 701-732, 901-907; *Lowing v. Public School Employees' Retirement Bd.*, 776 A.2d 306 (Pa. Cmwlth. 2001). Mr. Lengler merely characterized his interpretation as a nonbinding prediction.

Mr. Lengler's and Mr. Hickey's correspondence may only be construed as non-binding predictions, opinions or interpretations. At most, Mr. Lengler's letters constitute an unofficial summary of law. Mr. Hickey's correspondence is a prediction on the results of an audit based on the "assumption" of Pennsylvania adopting a *fluctuating workweek*.

Mr. Lengler, in his November 12, 1998 letter to Ms. Harris, made it clear that the letter comprises his prediction on the resolution of this issue in Pennsylvania. In a December 30, 1998 letter to you, Mr. Lengler also explained the unofficial and non-binding aspect of his November 12, 1998 letter to Ms. Harris:

> Regarding your question of whether I intended my letter to "constitute an official expression" of Department [of Labor and Industry] policy. I am not certain what you mean by that. Has it been published in the <u>Pennsylvania Bulletin</u> or <u>Pennsylvania Code</u>? The answer is no. Has it been cleared with the appropriate Department officials? The answer is yes. Has the Department implemented Part IV [pertaining to *fluctuating workweek*] in a specific situation? The answer is no-I thought that letter **made it clear that I was offering a prediction of how we might deal with the issue in the future. Is my letter binding on Department officials? The answer is no. They could always decide not to follow my predicted course, and perhaps, the state appellate courts will have established binding precedent by that time.**

(Emphasis added)

001877

 

Mark A. Sereni, Esquire
February 26, 2003
Page 3

The issue of *fluctuating workweek* is a matter of law that requires judicial interpretation and resolution. The Minimum Wage Act does not assign an adjudicative role to the Department in disputes involving overtime. Rather, that role is reserved to the courts. Minimum Wage Act, 43 P.S. §§ 333.112, 333.113.

Much of your request also covers documents and information that are clearly privileged under the attorney-client privilege, the deliberative process privilege and the attorney work product doctrine, among other privileges. All of these privileges apply to Commonwealth attorneys. For example, seeking information on advice that attorneys provide to their client, attorney drafts of letters and legal opinions and internal agency deliberations is prohibited. *See* 42 Pa. C.S. § 5928; Pa. R.C. P. 4003.3; *Commonwealth v. Vartan t/a Independent American Inv.*, 557 Pa. 390, 733 A.2d 1258 (1999); *Tribune-Review Publishing Co. and WPXI v. Dep't of Community and Economic Development*, No. 2541 C.D. 1999 (Pa. Cmlwth., filed January 3, 2003); *Gould v. Aliquippa*, 750 A.2d 934 (Pa. Super 2000); *Joe v. Prison Health Systems, Inc.*, 782 A.2d 24 (Pa. Cmwlth. 2001). Seeking confidential information pertaining to Mr. Lengler's job is also unreasonably intrusive and oppressive in this case. Pa. R.C. P. 4011(b).

The Department objects to the information requested in items, 3,4,5,6,10,11,12 and 13 of the appendix to your subpoenas and to any other item that may violate a lawful privilege. Failure to object to your subpoenas for some of the requested information would constitute an ethical violation of the duties that government attorneys owe to their clients. To the extent that any deposition is still necessary, it also requested that this deposition be held in the Labor and Industry offices in Harrisburg for the convenience of the Commonwealth employees.

If these matters are not satisfactorily resolved within seven days, I will file the appropriate motions with the court to protect our clients' interests. Please contact me if you have any questions or wish to discuss this matter further.

Very truly yours,

James A. Holzman
Deputy Chief Counsel

JAH/

cc:    Judith E. Harris, Esquire
       Richard C. Lengler, Deputy Chief Counsel
       Joseph C. Hickey, Investigative Supervisor