IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY CERUTTI, JAMES COFFMAN,
JOHN CONSTABILE, MATTHEW
DONALDSON, ANTHONTY
GEORGIANA, DONALD MCKNIGHT,
LINDA MASSUCCI, MICHAEL
MASSUCCI, SHAUN CHRISTOPHER,
AND JOHN ARISON, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

FRITO LAY, INC.,

Defendant.

CIVIL ACTION NO. 09-22

## MEMORANDUM OPINION

CONTI, District Judge

### I.     Introduction

Pending before the court is a motion for partial summary judgment ("Motion") (ECF No.

26), filed by defendant Frito-Lay, Inc. ("defendant" or "Frito-Lay") with respect to claims filed

by plaintiffs Nancy Cerutti ("Cerutti"), James Coffman, John Constabile, Matthew Donaldson,

Anthony Georgiana, Donald McKnight, Linda Massucci, Michael Massucci, Shaun Christopher,

and John Arison (collectively, "plaintiffs").  Plaintiffs assert that Frito-Lay violated the

Pennsylvania Minimum Wage Act of 1968 ("PMWA"), as amended, 43 PA. CONS. STAT. §§

333.101 et seq., by failing to pay them overtime ("OT") compensation as required by 43 PA.

CONS. STAT. § 333.104(c).  Plaintiffs allege claims on behalf of themselves and others similarly

situated.  Because a class has not been certified at this time, however, only the named plaintiffs

are before the court.  For the reasons stated below, the court will grant in part and deny in part

Frito-Lay's Motion.


II.     **Procedural and Factual Background**

    A.     **Procedural Background**

Plaintiffs filed the instant action in the Court of Common Pleas of Fayette County,

Pennsylvania and defendant removed plaintiffs' action to federal court, pursuant to the Class

Action Fairness Act of 2005, 28 U.S.C. § 1453.  (ECF No. 1.)  After removal, plaintiffs filed an

amended complaint ("Amended Complaint") asserting that Frito-Lay failed to pay overtime

("OT") compensation as required by the PMWA, for the period from April 21, 2006 through the

present.  (ECF No. 21.)

Frito-Lay argues it is entitled to partial summary judgment because: 1) plaintiffs were

exempt from OT compensation under the Pennsylvania motor carrier exception ("PMCE") to the

PMWA, which is codified in 43 Pa. Cons. Stat. § 303.105(b)(7), for the entire period in

question; and 2) even if plaintiffs' were not exempt, Frito-Lay properly compensated plaintiffs

for all OT hours worked utilizing the fluctuating workweek ("FWW") method of calculating OT

compensation, described in 29 C.F.R. § 778.114.  Plaintiff disputes those arguments.

    B.     **Factual Background[1]**

Frito-Lay argues that the issues before the court are solely legal in nature.  Plaintiffs

agree with one caveat:  plaintiffs indicate that a least one legal issue raised by defendant Frito-

Lay, i.e., the calculation of when the hourly rate of pay is determined, must be resolved by a

---

[1]The factual background is derived from the consolidated statement of undisputed material facts ("SF"). (ECF No. 34.)

jury.[2]  The relevant factual background, however, is not complex and is focused upon Frito-Lays'

driving operations, its OT compensation method, and plaintiffs' job responsibilities.

Frito-Lay is an international snack food manufacturing company engaged in

manufacturing, sales and distribution of snack foods across the United States, Canada and

Mexico.  (SF ¶ 1; ECF No. 34.)[3]  Frito-Lay sells and delivers its products to customers in

Pennsylvania primarily through route salesman representatives ("RSRs").  (Id. ¶ 3.)  At all

relevant times, plaintiffs were RSRs.  (Id. ¶ 6.)  Nine plaintiffs drove Frito-Lay's trucks with a

gross vehicle weight rating ("GVWR") under 10,001 pounds.  (Id.)  One plaintiff - Cerutti -

drove a Frito-Lay's truck with a GVWR over 10,001 pounds.  (Id.)

Frito-Lay compensated plaintiffs through a base salary and commissions on sales,

pursuant to a collective bargaining agreement ("CBA") negotiated between the RSRs' union and

Frito-Lay.  (SF ¶ 4.)  Under the CBA, plaintiffs were entitled to OT compensation for all time

worked over forty hours in a workweek.  Frito-Lay pays plaintiffs OT at one-half their regular

rate of pay using the FWW method described in the federal code of regulations, 29 C.F.R. §

778.114.  (Id. ¶ 5.)  Frito-Lays' handbook explains the OT compensation method applicable to

plaintiffs as follows:

>  Any week in which you work more that forty (40) hours, you will
>  receive, in addition to your base salary, extra pay for overtime
>  hours.  This overtime is calculated as follows:

_____

[2]Neither party waived its right to submit evidence and argument on any factual issues, including facts supporting the
requirements of the PMCE and the FWW method.  Defendant submits that such evidence or argument is not relevant
for purposes of the Motion.

[3]Frito-Lay alleges that because plaintiffs did not support their responses to defendant's undisputed statement of
material facts with citations to the record, as required by the local rules of the District Court for the Western District
of Pennsylvania, defendant's version of the material facts is to be considered as undisputed by plaintiffs.  Defendant
is correct.  W.D. Pa. LCvR.56C.1.b ( referring to LCvR.56B.1).

| Base Salary + any Commissions | = | TOTAL WEEKLY COMPENSATION |
|---|---|---|
| Divide Total Weekly Compensation by Total hours worked for that week | = | HOURLY RATE OF PAY |
| Take Hourly Rate of Pay, multiply this number by .5, then multiply by the number of overtime hours | = | OVERTIME PAID FOR THAT WEEK |

(SF ¶ 5, ECF No. 34; Def.'s RSR Handbook, App. Ex. B, ECF No. 29.)


### III.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.**   A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.   The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   The court should state on the record the reasons for granting or denying the motion.
> . . .
> **(c) Procedures.**
> **(1)** *Supporting Factual Positions*.   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

4

> sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing Anderson, 477 U.S. at 248-52; Celotex Corp., 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## IV.    Discussion

Plaintiffs argue that Frito-Lay violated the PMWA because it failed to record accurately all the hours worked by plaintiffs and failed to compensate them for all hours they worked. Plaintiffs contend they were entitled to be paid straight time at their regular rate of pay for all hours worked up to forty hours in a workweek, and OT compensation at not less than one and one-half times their regular rates of pay for all hours worked in excess of forty hours in a workweek, pursuant to 43 PA. CONS. STAT. §§ 333.104(c).  Plaintiffs allege that Frito-Lay willfully failed to pay them properly, in violation of the PMWA.  "The question of how Plaintiff[s] spent [their] time is a question of fact, while whether those particular activities exclude [them] from the overtime benefits of the FLSA is a question of law."  Morrison v. Quality Transps. Servs., Inc., 474 F.Supp.2d 1303, 1308 (S.D. Fla. 2007) (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)).

Frito-Lay contends that the PMCE applies to all plaintiffs for the entire limitations[4] period, or, at the very least until June 6, 2008.  Plaintiffs contend that the PMCE did not exempt them at any time after April 26, 2006.  Plaintiffs agree that they were exempt from the OT compensation requirements of the PMWA prior to April 26, 2006, which is the date Frito-Lay became aware of the effect of enactment of the Safe, Accountable, Flexible, Efficient Transportation Equity Act:  A Legacy for Users ("SAFETEA-LU"), Pub. L. 109-59, 119 Stat.

---

[4] Frito-Lay does not address a specific statute of limitations period.  The applicable statute of limitations under the PMWA is three years.  See Gonzalez v. Bustleton Servs., Inc., Civ. A. No. 08-4703, 2010 WL 1813487, at *6 (E.D. Pa. Mar. 5, 2010) ("Having afforded its citizens greater protection than that offered by the FLSA, [Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.] PMWA is not preempted by the FLSA in this regard.") (citing Walker v. Washbasket Wash & Dry, No. 99-4878, 2001 WL 770804, at **18-19 (E.D. Pa. Jul 5, 2001)). The statute of limitations under the FLSA is two years, absent a showing of defendant's willfulness, extending it to three years. 29 U.S.C. § 255 (a); see Veliz v. Cintas Corp., No. C 03-1180, 2008 WL 4911238, at *9 (N.D. Cal. Nov. 13, 2008).

1144.  The SAFETEA-LU made changes to the Federal Motor Carrier Act ("MCA"), as

amended, 49 U.S.C. §§ 301 et seq.

A.  **Applicability of the Federal Motor Carrier Act to the PMCA**

In 1935, Congress enacted the MCA.  United States v. Am. Trucking Ass'ns, 310 U.S.

534, 538 (1940) (discussing the purposes and policies of the MCA).  An objective of the MCA

was to ensure the safety of operations of the motor transportation industry.  Id. at 538-39.

Congress empowered the Secretary of Transportation[5] to "prescribe requirements for – (1)

qualifications and maximum hours of service of employees of, and safety of operation and

equipment of, a motor carrier. . . ." 49 U.S.C. § 31502(b)(1)).  The term "motor carrier" meant "a

person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(14).

In 1938, Congress enacted the Fair Labor Standards Act, as amended ("FLSA"), 29

U.S.C. §§ 201 et seq.  The PMWA, enacted in 1968, mirrors in many respects the FLSA and "is

also designed to protect employees who do not have real bargaining power."  Commonwealth v.

Stuber, 822 A.2d 870 (Pa. Commw. Ct. 2003), aff'd, 859 A.2d 153 (Pa. 2004) (finding that

definitions of "employ," "employer" and "employee" in the two acts are virtually identical).[6]

Generally, the PMWA and the FLSA each require an employer to pay overtime to employees for

hours worked over forty in a workweek.  43 PA. CONS. STAT. 333.104; 29 U.S.C. § 207(a)(1).

---

[5] Initially, the Interstate Commerce Commission ("ICC") was charged with enforcing the MCA.  Mayan v. Rydbom Express, Inc., Civ. A. No. 07-2658, 2009 WL 3152136, at *2 n.3 (E.D. Pa. Sept. 30, 2009).  In 1966, Congress transferred the MCA enforcement duties to the Department of Transportation ("DOT").  Id.; see 49 U.S.C § 31502 .

[6] "Three years before the passage of the FLSA, Congress enacted the Motor Carrier Act to promote efficiency and safety in interstate motor transportation."  Morrison v. Quality Transps. Servs., Inc., 474 F.Supp.2d 1303, 1308 n.1 (S.D. Fla. 2007) (citing Levinson v. Spector Motor Serv., 330 U.S. 649 (1947)); "The Department of Labor 's jurisdiction under the FLSA and the Department of Transportation's jurisdiction under the Motor Carrier Act are mutually exclusive and there is no overlapping jurisdiction." Id.  at 1309 n.2 (citing Morris v. McComb, 332 U.S. 422, 437-38 (1947)).

### 1.    Motor Carrier Exemption

This general rule, however, is subject to various exemptions in both the federal and state

statutes.  One federal exemption is the Federal Motor Carrier Exemption ("FMCE"), which

provides in relevant part:

> The provisions of [29 U.S.C.] section 207 of this title [the FLSA]
> shall not apply with respect to
> > (1)  any employee with respect to whom the [Federal]
> > Secretary of Transportation has power to establish
> > qualifications and maximum hours of service pursuant to
> > the provisions of section 31502 of Title 49; . . . .

29 U.S.C. § 213(b)(1).  Prior to August 10, 2005 and after June 6, 2008, under § 31502, the

Secretary of Transportation was and is authorized to establish qualifications and maximum hours

of service for "employees . . . of a motor carrier."  49 U.S.C. § 31502(b)(1).

The PMCE, which is modeled after the FMCE, is set forth in 43 PA. CONS. STAT. §

333.105(b)(7), which provides in relevant part:

> (b) Employment in the following classifications shall be exempt
> from both the minimum wage and overtime provisions of this act
> [the PMWA]
> . . .
> > (7) Any employe[7] of a motor carrier with respect to whom
> > the Federal Secretary of Transportation has power to
> > establish qualifications and maximum hours of service
> > under 49 U.S.C. § 3102(b)(1) and (2) (relating to
> > requirements for qualifications, hours of service, safety and
> > equipment standards). [8]

43 PA. CONS. STAT. § 333.105(b)(7).

---

[7] The word "employee" is spelled "employe" throughout the PMWA.

[8] Former § 3102 is currently codified at 49 U.S.C. § 31502.

"The 'fundamental test' for determining whether the [FMCE] applies is whether 'the employee's activities affect safety of operation' of motor vehicles and are therefore within the jurisdiction of the Secretary of Transportation." Dalton v. Sabo, Inc., Civ. No. 09-358, 2010 WL 1325613, at *2 (D. Or. Apr. 1, 2010) (quoting Levinson v. Spector Motor Serv., 330 U.S. 649, 671 (1947)). "Generally, '[t]he duties of drivers affect safety of operation, so drivers employed by motor carriers covered by the Motor Carrier Act are subject exclusively to the authority of the Secretary of Transportation.'" Id. (quoting Mayan v. Rydbom Exp., Inc., Civ. A. No. 07-2658, 2009 WL 3152136, at *3 (E.D. Pa. Sept.30, 2009) (citing Levinson, 330 U.S. at 664-65)).

The party seeking to invoke the FMCE carries the burden of proving "'plainly and unmistakably'" that it is entitled to the exemption. Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 258 (3d Cir. 2005) (quoting Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992)); Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206 (1996). Exemptions from the FLSA constitute an affirmative defense construed narrowly against the employer. Packard, 418 F.3d at 250 (citing Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 180 (3d Cir. 2000)); Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1962). Under those considerations which are applicable to an analysis under the PMCE, Frito-Lay has the burden to prove that the PMCE unmistakably applies to the plaintiffs. See Stuber, 822 A.2d at 873.

The parties agree that at the time the PMCE was enacted - 1990 – certain employees of a Pennsylvania motor carrier were exempt from the OT provisions of both the FLSA and PMWA.[9] The parties disagree, however, whether recent amendments to the MCA and the FLSA - as will

---

[9] Only employees of a motor carrier whose duties in interstate activities affect the "safety of operation" are exempt under the FMCE. Friedrich, 974 F.2d at 417, 419.

be discussed *infra* - are incorporated into the PMCE. Defendant argues that they are not. Plaintiffs argue that they are.

There are four time frames that the court must consider here: 1) pre-August 10, 2005, 2) between August 10, 2005 and April 26, 2006, 3) between April 26, 2006 and June 6, 2008, and 4) post-June 6, 2008. The applicable periods relate to the timing of various amendments to the MCA and the FLSA. It is noteworthy that no relevant amendments were made to the PMWA or the PMCE after August 10, 2005.

### a.    Before August 10, 2005

Prior to August 10, 2005, a motor carrier was defined in 49 U.S.C. § 31502 as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 31502 (12) (2000). The jurisdiction of the federal Secretary of Transportation covered motor carriers and did not relate to the weight of vehicles driven by employees of motor carriers. The effect of the pre-2005 provisions of the MCA was to exempt all drivers employed by a motor carrier - irrespective of the weight of the vehicles - from the OT provisions of the FLSA. Brooks v. Halsted Commc'ns, LTD, 620 F. Supp.2d 193 (D. Mass. 2009).

On October 1, 1990, the federal Department of Transportation's Motor Carrier Safety Regulations applicable to drivers of commercial motor vehicles took effect. 49 C.F.R. §§ 390 et seq. Regulations set forth in 49 C.F.R. 395.3(a)[10] set maximum hours for drivers, defined in 49

---

[10]    **§ 395.3 Maximum driving time for property-carrying vehicles.**

. . .

(a) No motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle:

(1) More than 11 cumulative hours following 10 consecutive hours off-duty;

C.F.R. § 390.5 as "any person who operates a commercial motor vehicle." A commercial motor vehicle was defined in the regulations as:

> any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle—
>
> > (1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or
> >
> > (2) Is designed or used to transport more than 8 passengers (including the driver) for compensation; . . .

49 C.F.R. § 390.5.

Under these regulations, the Secretary of Transportation was not exercising jurisdiction over drivers of motor vehicles with a GVWR of 10,0000 pounds or less. Friedrich, 974 F.2d at 419. The Third Circuit Court of Appeals in Friedrich held that even though the Department of Transportation did not exercise jurisdiction over drivers of vehicles with gross weights of 10,000 pounds or less, the Department of Transportation retained its authority to regulate safety in the motor carrier industry and therefore the motor carrier exception applied regardless of the vehicle operated by the employee. Because Congress did not amend 49 U.S.C. § 3102 (now § 31502) to apply only to commercial vehicles, as defined in the Federal Motor Carrier Safety Regulations, the MCA exemption to the FLSA remained applicable to light weight vehicles. Id. The PMCE likewise applied to drivers of light weight vehicles. Friedrich, 833 F.Supp. at 476-77.

---

(2) For any period after the end of the 14th hour after coming on duty following 10 consecutive hours off duty, except when a property-carrying driver complies with the provisions of § 395.1(o) or § 395.1(e)(2).

49 C.F.R. § 395.3.

### b.     After August 10, 2005 and Prior to June 6, 2008

On August 10, 2005, SAFETEA-LU was enacted.  It changed the reference to a "motor

carrier" in § 31502 to a "commercial motor vehicle." Pub. L. No. 109-59, 119 Stat. 1144

(emphasis added); Scott v. Raudin McCormick, Inc., No. 08-4045, 2009 WL 3561301, at *7

(Oct. 30, 2009) (citing Tews v. Renzenberger, Inc., 592 F. Supp. 2d 1331, 1343 (D. Kan. 2009);

49 U.S.C. § 13102(14)).  A "commercial motor vehicle" is defined as:

> (1) "commercial motor vehicle" means a self-propelled or towed
> vehicle used on the highways in interstate commerce to transport
> passengers or property, if the vehicle--
>
>> (A) has a gross vehicle weight rating or gross vehicle weight of
>> at least 10,001 pounds, whichever is greater;
>>
>> (B) is designed or used to transport more than 8 passengers
>> (including the driver) for compensation;
>>
>> (C) is designed or used to transport more than 15 passengers,
>> including the driver, and is not used to transport passengers
>> for compensation; or
>>
>> (D) is used in transporting material found by the Secretary of
>> Transportation to be hazardous under section 5103 of this
>> title and transported in a quantity requiring placarding under
>> regulations prescribed by the Secretary under section 5103.

49  U.S.C. § 31132 (1)(A)-(D).

Under that change the Secretary of Transportation no longer had jurisdiction over drivers

of light weight vehicles, i.e., vehicles with a GVWR of 10,000 pounds or less.  Cf. Friedrich, 974

F.2d at 419.

### c.     Safe Harbor Period (August 10, 2005 – August 9, 2006)

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act

("TCA"), 110 Pub. L. No. 244, 122 Stat. 1572., which amended certain provisions of the MCA

and the FLSA. This act restored the "previous definition of 'motor carrier' by replacing [in § 31502] 'commercial motor carrier' with 'motor carrier.'" <u>Dalton</u>, 2010 WL 1325613, at *3 (quoting Pub. L. No. 110-244 § 305(c) (2008)). Although, the "commercial motor vehicle" language was removed, the removal was not made retroactive.[11] The TCA, however, provided a safe harbor of one year from August 10, 2005 to August 9, 2006 for any failure by an employer to pay OT compensation pursuant to the FLSA to employees by employers who did not have actual knowledge that the scope of the exemption had changed when the SAFETEA-LU was enacted in 2005 (the "Safe Harbor Period"). 122 Stat. 1572. Section 306(b) of the TCA provides in relevant part:

> (1) LIMITATION ON LIABILITY.-An employer shall not be liable for a violation of section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) with respect to a *covered employee* if-
>     (A) the violation occurred in the 1-year period beginning on August 10, 2005; and
>     (B) as of the date of the violation, the employer did not have actual knowledge that the employer was subject to the requirements of such section with respect to the covered employee.

Pub. L. No. 110-244, 122 Stat. 1572 § 306(b)(1) (emphasis added). The phrase "covered employee" is defined in the TCA as an individual:

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);

---

[11] <u>See</u> <u>Miller v. Prof'l Transp., Inc.</u>, No. 3:09-cv-0111, 2010 WL 3398935, at **5-6 (S.D. Ind. Aug. 25, 2010); <u>Benoit v. Tri-Wire Eng'g Solutions, Inc.</u>, 612 F.Supp.2d 84 (D. Mass. 2009) (TCA, which re-amended the definition of "motor carrier" for purposes of the MCA by striking the word "commercial" and restoring the definition to its prior state prior to passage of the SAFETEA-LU was not retroactively applicable); <u>Tews v. Renzenberger, Inc.</u>, 592 F. Supp.2d 1331, 1347 (D. Kan. 2009) ("§ 306(b) of the Technical Corrections Act includes a one-year safe harbor from liability for overtime pay following SAFETEA-LU for employers who did not have actual knowledge of the pertinent SAFETEA-LU amendments") (citing <u>Vidinliev v. Carey Int'l, Inc.</u>, 581 F.Supp.2d 1281, 1291 (N.D. Ga. 2008) (concluding that the TCA does not apply retroactively, in part because of one-year safe harbor; <u>Loyd v. Ace Logistics, LLC</u>, No. 08-CV-00188, 2008 WL 5211022, at *8 (W.D. Mo. Dec. 12, 2008) (same); <u>Veliz</u>, 2008 WL 4911238, at *5 (same).

> (2) whose work, in whole or in part, is defined-
>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles-
>>> (i) designed or used to transport more than 8 passengers (including the driver) for compensation;
>>> (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or
>>> (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
>> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

Id. at § 306(c)(1)-(3); see Vidinliev v. Carey Int'l, Inc., 581 F. Supp. 2d 1281, 1290-91 (N.D. Ga. 2008).

Plaintiffs allege that defendant had actual knowledge that the scope of the exemption changed no later than April 26, 2006 and do not contest the applicability of the PMCE prior to that date. Frito-Lay did not dispute this allegation. (Pls.' Br. 5, App., Ex. 1, ECF No. 30-1 at 6 ¶ 7.) ("Through affidavits and deposition testimony, Defendant has established that they were unaware of the affect [sic] of the enactment of SAFETEA-LU had upon the Motor Carrier Act exemption as that exemption applied to their route salespersons until April, 2006.").

## 2. After June 6, 2008

As a result of the TCA amendments to the MCA on June 6, 2008, which replaced the words "commercial motor vehicle" with the words "motor vehicle" in § 31502, the Secretary of Transportation regained the authority or power to exercise jurisdiction over the qualifications and maximum hours of service of drivers of vehicles with a GVWR of 10,000 pounds or less. As

noted during the Safe Harbor Period which ended no later than August 9, 2006, and in the case of Frito-Lay which ended on April 26, 2006, the FMCE continued to apply to light weight vehicles. It is clear that after June 6, 2008, the Secretary of Transportation had the same jurisdiction he or she possessed prior to August 10, 2005. There was one other change made by the TCA which is relevant to arguments raised here.

Section 306(a) of the TCA, added a note with respect to the applicability to § 207 of the FLSA, providing in relevant part:

> (a) APPLICABILITY FOLLOWING THIS ACT - Beginning on the date of enactment of this Act [i.e., June 6, 2008, section 7 of the [FLSA] shall apply to a *covered employee* notwithstanding section 13(b)(1) of that Act (29 U.S.C. § 213(b)(1)).
> . . .
> (c) COVERED EMPLOYEE DEFINED . . . an individual--
>
> > (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
> >
> > (2) whose work, in whole or in part, is defined —
> >
> > > (A) as that of a driver, driver's helper, loader, or mechanic; and
> > >
> > > (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . .
> >
> > > . . .
> >
> > (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

122 Stat. 1572, § 306(a) and (c). This change refers to the FLSA and not to the jurisdiction of the Secretary of Transportation under the MCA.

### B. Parties' Arguments

Frito-Lay argues that it is entitled to partial summary judgment for three reasons. First, Frito-Lay argues plaintiffs were exempt from OT requirements under the PMCE, the PMWA exemption for employees of motor carriers, for the entire limitations period of this action. See 43 Pa. Cons. Stat § 333.105(b)(7). As previously noted, both the FLSA and the PMWA generally require an employer to pay OT to employees for hours worked over forty in a workweek, except in certain limited exceptions. 29 U.S.C. §§ 207(a)(1) and 213(b)(1); 34 Pa. Cons. Stat. §§ 231.41, 333.105; Stuber, 822 A.2d at 873 (the PMWA is interpreted in light of the FLSA; requirements for proof of an exemption under the PMWA reflect those required under the FLSA). Frito-Lay concedes that the SAFETEA-LU altered the jurisdiction of the Secretary of Transportation by changing the reference in § 31502 from a "motor carrier" to a "commercial motor carrier." Frito-Lay argues this alteration is irrelevant to plaintiffs' claims because the PMCE was not impacted by SAFETEA-LU. Frito-Lay contends that the PMCE does not incorporate amendments to the MCA, made subsequent to 1990, the year the federal law was incorporated into Pennsylvania law, and since the SAFETEA-LU amendments was enacted after the PMCE was promulgated, the truck weight limitation is not applicable to claims under the PMWA.

Plaintiffs argue the SAFETEA-LU provisions are applicable and they were not exempt from the OT requirements of the PMWA pursuant to the PMCE after the enactment of those provisions. Plaintiffs maintain that SAFETEA-LU affected changes in the application of the PMCE because changes in the MCA which affected the jurisdiction of the federal Secretary of Transportation were incorporated into the PMCE.

Second, and in the alternative, Frito-Lay argues that to the extent the PMCE incorporates SAFETEA-LU, drivers for companies whose fleets included trucks with a GVWR both over and

under 10,001 pounds continued to qualify for the exemption at all times. Frito-Lay asserts that SAFETEA-LU only affected the definition of qualifying employers, and had no effect on qualifying employees. Defendant maintains that its employees were not covered by SAFETEA-LU, and that the earliest possible date the employees could be covered would be June 6, 2008 - the date Congress enacted the TCA.

Third, even if the court, as a matter of law, determines that Frito-Lay is liable to plaintiffs for OT compensation for the applicable time period, Frito-Lay asserts that it properly compensated plaintiffs under the PMWA by voluntarily paying OT compensation to plaintiffs for hours worked over forty in a workweek, using the FWW method of calculating OT compensation set forth in 29 C.F.R. § 778.114. Defendant maintains that courts have found the FWW method of calculating OT compensation lawful in Pennsylvania. Plaintiffs respond that the Motion should be denied because Frito-Lay did not carry its burden of showing that Pennsylvania considers the FWW lawful under the instant circumstances. Plaintiffs argue there is a genuine issue of material fact about whether defendant met the threshold requirements of affording defendant the option to pay plaintiffs OT compensation pursuant to the federal FWW method. Each argument will be addressed.

### 1. Applicability of MCA amendments to the PMCE

Defendant contends the amendments to the MCA have no impact on the PMCE because, as a principle of statutory construction, the PMCE does not incorporate any amendments to the MCA made after the date of the enactment in 1990 of the PMCE. Defendant relies upon Appeal of Free, 151 A. 583 (Pa. 1930). In Free, the Pennsylvania Supreme Court recognized:

> if a statute specifically adopts a . . . particular provision[ ] of a
> former statute. . .such statute or particular provision thereof
> becomes a part of the adopting statute as though written therein,
> and are enforced by virtue of the adopting act; but it does not

> include any subsequent amendment or modification of the prior
> statute or its particular provisions, unless expressly so declared or
> clearly implied.

Free, 151 A. at 584.  Defendant's reliance, however, is misplaced in the particular context of this case.

The issue before the Pennsylvania Supreme Court in Appeal of Free was the proper interpretation of the phrase "under existing law" in the context of the disposition of fines imposed upon persons under the Automobile Code of July 7, 1913,  1913 Pa. Laws 672, as amended, for conviction of driving under the influence of alcohol.  Appeal of Free, 151 A. at 583.  Section 22 of 1913 Pa. Laws 672 provided that fines collected for violations of the act were to be paid to the state treasurer to support state highways.  Id.  York County, Pennsylvania, claimed that it was entitled to the funds, pursuant to the Special Act of April 3, 1867, 1867 Pa. Laws 719, which provided:

> ''all fines . . . imposed in the courts of York county, which
> under existing laws, are not payable to the commonwealth,
> for its use, are hereby directed to be paid into the treasury
> of said county, for the use of a law library.''

Appeal of Free, 151 A. at 583 (quoting 1867 Pa. Laws 719, sec. 1) (emphasis added).  The specific issue before the Pennsylvania Supreme Court was whether the language "under existing law" meant "only laws existing at the time of the passage of the act, or whether it include[d] laws subsequently passed and in existence at the time the fines and penalties [were] imposed."  Id. at 584.

In discussing that issue in a general vis-à-vis specific context, the Pennsylvania Supreme Court in McKinney v. Foster, 137 A.2d 502 (Pa. 1958), instructed:

In Free's Appeal . . . [t]he specific question was whether the 1867 Act required that fines for the offense of driving while intoxicated, punishable under the 1913 Automobile Code, as amended, be paid to the county since the Automobile Code was not a *law in existence* in 1867, or whether the fines should go to the Commonwealth by virtue of the laws in existence at the time of imposition of the fines. **In deciding that 'existing laws' included laws subsequently passed and in existence at the time the fines and penalties are imposed,** this Court said, 301 Pa. at page 85, 151 A. at page 584:

> "The general rule of construction, where reference is made to existing laws, was discussed in Re Guenthoer's Estate, 235 Pa. 67, 83 A. 617, and this court there so thoroughly discussed the question that we deem it unnecessary to do more than quote what was there said (235 Pa. at page 73, 83 A. at page 617, 618): 'If a statute **specifically adopts a former statute or particular provisions of a former statue [sic] by reference to its title or otherwise**, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act; but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared **or clearly implied**. While this general rule of statutory construction is well settled and recognized by judicial decisions as well as by text-writers, yet **it is equally well established as a rule of statutory construction that where the reference in an adopting statute is to the law generally which governs the particular subject, and not to any specific act or part thereof designated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied.** We have frequently recognized this distinction and applied the rule that, where the reference in an adopting statute is to the law generally upon any subject, the adopting statute means the law in force on the subject at the time it is invoked.. . ."

It seems clear to us, therefore, that Section 3 of the Act of 1854 applies to violations of the intoxicating beverage laws as they existed at the time of the offense . . ..

McKinney v. Foster, 137 A.2d at 506-07(emphasis added). Notably, the court in Appeal of Free and in McKinney each interpreted the statute in effect at the time of the offense.

Defendant's argument assumes that the reference in 43 PA. CONS. STAT. § 333.105(b)(7) to 49 U.S.C. §§ 3102(b)(1) and (2) refers to a statute of specific reference – as opposed to a statute of general reference. This assumption belies the parenthetical following 49 U.S.C. §§ 3102(b)(1) and (2) "(relating to the requirements for qualifications, hours of service, safety and equipment standards)". The provisions of 42 U.S.C § 31502 [12] are general with respect to the nature of the subject considered, i.e., granting jurisdiction to the federal Secretary of Transportation to establish qualifications and maximum hours of service for employees of a motor carrier. Therefore, any amendments to 49 U.S.C. §§ 3102(b)(1) and (2) – now § 31502 -- relating to requirements for qualifications, hours of service, safety and equipment standards were clearly implied to be incorporated into the PMCE at 43 PA. CONS. STAT. § 333.105(a) and (b)(7).

As discussed *supra*, in 1990 when the PMCE was enacted, the jurisdiction of the Secretary of Transportation under the MCA was not conditioned on truck weight. Amendments to § 31502 of the MCA in 2005, however, in effect limited the Secretary of Transportation's jurisdiction conditioned upon truck weight. The amendments to the MCA in 2008 restored that jurisdiction. Because amendments to the MCA made after 1990 changing the jurisdiction of the Secretary of Transportation relating to "requirements for qualifications, hours of service, safety and equipment standards," 43 PA. CONS. STAT. § 333.105(b)(7),[13] affect the scope of the PMCE,

---

[12] Codified in 1990 at § 3102. In 1994, § 3102 was amended generally, restated without substantive change and renumbered at § 31502. Pub. L. No. 103-272. (1994).

[13] Including the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat. 1144 (2005), and the SAFETEA-LU Technical Corrections Act ("TCA"), Pub. L. No. 110-244, 122 Stat. 1572 (2008).

this court cannot agree with defendant's argument that the weight of its trucks driven by plaintiffs is irrelevant to the instant cause of action.[14]

Plaintiffs rely upon Pennsylvania rules of statutory construction to support this conclusion. The pertinent provision, which helps inform this court's conclusion, is:

> **§ 1937. References to statutes and regulations**
>
> (a) A reference in a statute to a statute or to a regulation issued by a public body or public officer includes the statute or regulation **with all amendments and supplements thereto and any new statute or regulation substituted for such statute or regulation, as in force at the time of application of the provision of the statute in which such reference is made**, unless the specific language or the context of the reference in the provision clearly includes only the statute or regulation as in force on the effective date of the statute in which such reference is made.
>
> (b) The provisions of subsection (a) of this section shall apply to every statute finally enacted on or after July 1, 1971.

1 PA. CONS. STAT. § 1937 (emphasis added). Therefore, the reference to the jurisdiction of the Secretary of Transportation in the PMCE refers to the Secretary's jurisdiction on the date in issue, not the jurisdiction applicable in 1990.

Frito-Lay disputes the applicability of the rule of statutory construction set forth in 1 PA. CONS. STAT. § 1937 ("section 1937") on the basis that section 1937 is only applicable to another Pennsylvania statute, regulation or ordinance, and is not applicable where the statute makes reference to a federal statute in an area where Congress has not exercised its powers under the Supremacy Clause. Defendant contends the construction principle was intended to apply to statutes issued by a public body within Pennsylvania, where changes to the incorporated provision would be under the control of the Pennsylvania legislature.

---

[14] See 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51:8 (7th ed. 2008) (citing McKinney v. Foster, 137 A.2d 502, 506 (Pa. 1958)).

Defendant maintains that incorporating such a provision with all future amendments of a federal statute would be an abdication of legislative responsibility and a violation of the nondelegation doctrine of the Pennsylvania Constitution vesting the legislative power of the Commonwealth in a general assembly at PA. CONST. art. II, § 1. Defendant relies upon Insurance Federation of Pennsylvania, Inc. v. Commonwealth, 889 A.2d 550, 553 (Pa. 2005) ("Under the non-delegation doctrine, 'the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority.'"). Defendant's reliance is misplaced.

The issue before the Pennsylvania Supreme Court in Insurance Federation of Pennsylvania was whether the Pennsylvania Department of Insurance could mandate binding arbitration for an uninsured motorist and underinsured motorist coverage dispute. The issue of incorporating an amendment to a federal statute that was originally incorporated into a Pennsylvania statute was not before the Court. That issue was before the Pennsylvania Commonwealth Court in Charter Hospital of Bucks County, Pa., Inc. v. Commonwealth, 534 A.2d 1125, 1129-30 (Pa. Commw. Ct. 1987).

In Charter Hospital, the Commonwealth Court of Pennsylvania determined that pursuant to Pennsylvania's Statutory Construction Act, 1 PA. CONS. STAT. § 1937, a self-destructive clause of the Pennsylvania Health Care Facilities Act exclusionary provision did not constitute an unlawful delegation of legislative authority to the federal Secretary of Health, Education and Welfare. The court reasoned that the type of legislation in that case fit a status-finding description – as opposed to rule-making - by asking for a determination about whether the exclusionary provision was inconsistent with a federal regulatory scheme. In discussing the

lawfulness of the delegation of legislative authority of Pennsylvania's General Assembly to the

federal Secretary of Health Education and Welfare, the court in <u>Charter Hospital</u> stated:

The law is well settled that:

> [T]he Legislature cannot delegate its power to make a law; but it
> can make a law to delegate a power to determine some fact or state
> of things upon which the law makes, or intends to make, its own
> action depend.
> *Locke's Appeal,* 72 Pa. 491, 498 (1873).

> *Locke's Appeal* thus distinguished between two types of
> legislation: "status-finding" and "rule-making". In *East Suburban
> Press, Inc. v. Township of Penn Hills,* 40 Pa. Commonwealth Ct.
> 438, 444, 397 A.2d 1263, 1266 (1979), we noted the following
> distinctions between the two:

> [L]egislation which involves *status-finding,* a statutory statement
> of policy by the legislature to become operative only upon the
> finding by an administrative agent that a described status exists. A
> status-finding statute does not involve a delegation of law-making,
> at least not in the sense of creating general rules governing the
> subject of the legislature's concern, and therefore the courts have
> not required detailed standards, but only a description of the
> status....

> A second type of statute of the *rule-making* type, where the
> legislature states a general policy but gives the administrative
> agent, within limits set by express standards, the power to fill in
> details of the policy with regulations. This type involves a
> delegation of rule-making in the sense of creating generalized rules
> of continuing application on the subject of the legislature's
> concern.

> *See also Latella v. Unemployment Compensation Board of Review,*
> 74 Pa.Commonwealth Ct. 14, 459 A.2d 464 (1983).

> The delegation in section 103 to the Secretary of Health, Education
> and Welfare fits the status-finding description. It asked for a
> determination as to whether the exclusionary provision was
> inconsistent with the federal regulatory scheme. No improper rule-
> making is involved; the clause does not delegate an untrammeled
> power to make a general rule.

The General Assembly enacted the Health Care Facilities Act to establish a certificate-of-need program under the auspices of the federal program, P.L. 93-641. To participate in the federal program, administratively and financially, the state program had to comply with federal requirements. The legislature, in enacting section 103 of the Act, intended to exclude non-recipient health care facilities from certificate-of-need review *unless* such an exclusion was inconsistent with federal regulations. Section 903 of the Act, 35 P.S. § 448.903, states:

> It is the intent of this act to meet minimal Federal requirements for compliance with Federal law and regulations under Title XV of the Public Health Service Act requiring State certificate of need legislation as interpreted by the General Assembly. Should any provisions be found by a court to violate such requirements, such provisions shall be invalid and severable.

> The self-destructing clause in section 103 ensured compliance with the applicable federal regulations, so that Pennsylvania could participate in the federally-sponsored certificate-of-need program. It did not delegate to the Secretary unlimited power to set a general policy for the state, but sought only a determination of whether this sole provision conformed to the established federal program.

Charter Hospital, 534 A.2d at 1129-30.

Defendant attempts to distinguish Charter Hospital on the basis that the Pennsylvania legislature does not need approval from the federal government to implement the PMWA. This distinction is not persuasive; rather, this court is persuaded that the intent of the PMCE is a status-finding type of legislation, as opposed to a rule-making type. Incorporating the reference to the jurisdiction of the federal Secretary of Transportation into the PMCE does not delegate to the federal government unlimited power to set a general policy for the state. Instead, like in Charter Hospital, it allows the Pennsylvania legislature to insure the PMCE exempts employees who have the status of being subject to the jurisdiction of the federal Secretary of Transportation. Therefore, the court finds that the PMCE incorporates the provisions of § 31502.[15] In other

---

[15] See Brown v. Ford Storage and Moving Co., Inc., 224 P.3d 593, 600-01 (Kan. App. 2010) (stating that the relevant Pennsylvania wage and hour law in issue in Friedrich v. U.S. Computer Sys., Inc., Civ. A. No. 90-1615,

words, to the extent the federal Secretary of Transportation has power to establish the qualifications and maximum hours of service for an employee, that employee will be exempt from the PMWA under the PMCE.

### 2. SAFETEA-LU's Effect on the Exempt Status of an Employee

#### a. <u>Applicability of safe harbor provision for period between August 10, 2005 and April 26, 2006</u>

Plaintiffs do not contest that the safe harbor provisions of the TCA are applicable here. (Pls.' Br. 5-6, ECF No. 30.) Because it is undisputed that Frito-Lay did not become aware of the SAFETEA-LU's effect until April 26, 2006, its driver employees will be exempt during that period.

#### b. **Hybrid Fleet Analysis of FMCE**

Here, the parties agree that SAFETEA-LU added a GVWR for the Secretary of Transportation to have jurisdiction to set qualifications and safety standards for employees of employers that are motor carriers. The parties agree that if an employer operates only vehicles over 10,001 pounds its employees are exempt from the OT requirements pursuant to the FMCE and, if amendments to the MCA are applicable to the PMCE, are exempt under the PMCE. Defendant and plaintiffs disagree, however, that post-SAFETEA-LU, but pre-TCA, in the situation where an employer may operate vehicles over and under the 10,000-pound threshold, an analysis of each individual employee's activities is required to determine whether an employee of that employer was subject to the jurisdiction of the Secretary of Transportation. Specifically, the parties disagree about whether during that period an employee's job requirements are considered in determining the applicability of the exemption from OT

---

1996 WL 32888 (E.D. Pa. Jan. 22, 1996), "'excluded FLSA-covered employees only to the extent that they were subject to the FLSA' . . . meaning that [Pennsylvania's law] operated as a stopgap to the FLSA, and the statute apparently contained no FLSA-employer exemption.") (quoting <u>Friedrich</u>, 1996 WL 32888, at *5.)

requirements of the FLSA and the PMWA. The issue raised is whether there is an exemption for employees of employers that operate vehicles with gross weights under and over 10,000 pounds – i.e., hybrid fleets, even though the employee may only operate a vehicle with a GVWR of 10,000 pounds or less.

Several courts have considered this issue with different outcomes depending upon the circumstances before the court. With respect to how the SAFETEA-LU change in referring to a "commercial motor carrier," rather than just a "motor carrier," applied prior to the 2008 change made by the TCA, which restored the reference to only a "motor carrier," the district court in Vidinliev[16] considered an argument that the exemption applied under SAFETEA-LU because it only required that an employer show that it had some commercial motor vehicles in its fleet. The court rejected that argument, stating:

> But if this were true, then a motor carrier could buy one
> commercial motor vehicle and thereafter all of its drivers
> would be exempt from overtime pay, no matter how remote or
> infrequent the possibility of an interstate trip in a commercial
> motor vehicle.

Vidinliev, 581 F. Supp. 2d at 1294. The court noted that federal regulations promulgated by the Department of Labor ("DOL") indicate that the inquiry involves a two-part test and that the second part of the test focuses on the "'class of work involved in the *employee's job.*'" Id. (citing 29 C.F.R. § 782.2(a) (emphasis added)). "Evidence regarding the makeup of [the employer's] vehicle fleet simply does not conclusively determine the character of the [employees'] activities." Id.

---

[16] The issue before the court in Vidinliev was predicated upon whether or not the individual employees made interstate trips. The court distinguished between focusing upon the employers' fleet and the character of the employees' job responsibilities. Vidinliev, 581 F.Supp.2d at 1286, 1293.

The plaintiffs in <u>Vidinliev</u> argued that, in order to meet the SAFETEA-LU definition, the defendants were required to show that each plaintiff "engaged in more than a *de minimus* number of interstate trips in commercial motor vehicles." <u>Id.</u> The court reasoned that under the plaintiffs' standard, "[a]n entire class of employees may be 'exempt even though the interstate driving on [sic] particular employees was sporadic and occasional, and in practice some drivers would not be called upon for long periods to perform any such work.'" <u>Id.</u> (citing 29 C.F.R. § 782.2(c)(1) and <u>Morris v. McComb</u>, 332 U.S. 422, 431 (1947)). Focusing on the character of the employees' activities, the court ruled that in order for the employees to be exempt from the OT requirements of the FLSA, the defendants had to show that "interstate trips in commercial motor vehicles are 'distributed generally throughout the year and their performance was shared indiscriminately by the drivers and was mingled with the performance of other like driving services.'" <u>Id.</u> (quoting <u>Morris</u>, 332 U.S. at 433).

In <u>Brooks v. Halsted Communications, Ltd</u>., 620 F. Supp. 2d 193 (D. Mass. 2009), the district court dealt with a similar issue. In that case, ninety-nine percent of the named defendants' trucks weighed less than 10,000 pounds. Those defendants argued that their employees were exempt from the OT provisions of the FLSA because the defendants were motor carriers over which the Secretary of Transportation had the power to establish working conditions for their employees. The defendants predicated their position upon their having at least one commercial motor vehicle with which they provided transportation for compensation. The court summed up the defendants' argument by stating:

> In short, according to Defendants, prior to passage of the TCA in 2008, one vehicle over 10,000 pounds, regularly (though not necessarily frequently) used in interstate commerce to transport people or property, could vaccinate an employer from the obligation to pay FLSA overtime to the entire body of its drivers.

Id. at 199.

The plaintiffs in Brooks argued:

> When SAFETEA-LU reduced the power of the Secretary of
> Transportation to reach only *commercial* motor carriers it
> necessarily also reduced the scope of the Secretary's power over
> employees, so that (as explicitly defined in [49 U.S.C.] section
> 31132(2)) it only reached ''an operator of a commercial motor
> vehicle."

Id. at 200.  The court noted the plaintiffs' emphasis on the inconsistency of the defendants' citing

"49 U.S.C. § 31132(1) for the definition of 'commercial motor vehicle' in order to establish their

entitlement to the exemption, while ignoring the very next provision of this section -- 31132(2) --

which defines 'employee' as 'an operator of a commercial motor vehicle....'"  Id.

In holding in the plaintiffs' favor the court quoted from a DOL field bulletin:

> "with the passage of SAFETEA-LU on August 10, 2005, an
> employee is covered by the [MCA exemption] only if that
> employee is engaged in transportation involving a 'commercial
> motor vehicle."  *See* U.S. Dep't of Labor, Wage & Hour Division,
> Field Assistance Bulletin No. 2007-2.

Id.

The court recognized that in this context DOL bulletins - as opposed to DOT's bulletins -

are entitled to diminished interpretive weight, but noted they should be still be considered.[17]  The

court pointed to two provisions of the TCA supporting the plaintiffs' interpretation of the import

of SAFETEA-LU: 1) the "safe harbor" provision providing protection for up to one year for an

---

[17] Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266, 273, 273 n .2 (S.D. N.Y. 2008) (citing 29 C.F.R. §
782.2(a) and noting the DOL's interpretive guidance regarding the FMCE is "entitled to respect to the extent that it
has the 'power to persuade'. . . . [w]hether the motor carrier exemption applies to an employee depends on the
nature of both the employer's and employees' activities."); cf. Packard v. Pittsburgh Transp. Co., 418 F. 3d 246 (3d
Cir. 2005) (citing FLSA § 13(b)(1), 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31501) (DOT official's opinion letter
endorsing a "through ticketing" test for determining whether drivers of disabled passengers were subject to DOT
regulation did merit judicial deference with respect to the question whether such drivers were excluded from the OT
protection of the FLSA pursuant to the MCA's vesting authority in the Secretary of Transportation to regulate
certain aspects of interstate transport); Penn Advert., Inc. v. Dept. of Transp., 730 A.2d 1060, 1061-62 (Pa. Commw.
Ct. 1999) ("[A]n administrative agency's interpretation of its own statutes and regulations are controlling unless (1)

employer having to pay OT wages to employees who operated light weight trucks; and 2) Congress' endorsement of SAFETEA-LU requiring "employers to treat drivers of light vehicles [10,000 pounds or less] differently from drivers of vehicles over 10,000 pounds. . . ." Id.

In Brooks, no driver operated a commercial motor vehicle or was ever likely to do so. In discussing "whether a 'hybrid' motor carrier- i.e., one with drivers operating vehicles weighing both above and below 10,000 pounds-was obliged to pay FLSA overtime to its drivers of lighter vehicles before June 6, 2008," the court cited decisions which addressed the issue. Brooks, 620 F. Supp.2d at 200-02. The court noted that other district court decisions, which favored the employees, focused on the duties of the employees and included Hernandez v. Brink's, Inc., No. 08-20717-CIV, 2009 WL 113406 (S.D. Fla. Jan. 15, 2009) (holding that mixed fleets containing both commercial and noncommercial vehicles should be treated for FLSA purposes as two separate sub-fleets); Tews, 592 F. Supp. 2d at 1346 (rejecting argument that "the mere presence of commercial motor vehicles in [a] fleet renders all employee-drivers exempt under the MCA exemption"); Vidinliev, 581 F. Supp. 2d 1281 (denying summary judgment regarding the applicability of the MCA exemption for claims arising after August 10, 2005 where the defendant operated a mixed fleet of commercial and noncommercial motor vehicles); and Kautsch v. Premier Commc'ns, 502 F. Supp. 2d 1007 (W.D. Mo. 2007) (finding that the MCA exemption did not apply to the plaintiffs' claims after August 10, 2005 because they did not operate commercial motor vehicles). Brooks, 620 F. Supp. 2d at 200-01.

The court in Brooks factually distinguished decisions potentially supporting the defendants' focus on an employer's fleet. See Collins v. Heritage Wine Cellars, Ltd., No. 07-CV-1246, 2008 WL 5423550, at **19, 20 n.11 (N.D. Ill. Dec. 29, 2008) (the plaintiffs

---

that interpretation is plainly erroneous or inconsistent with the statute or regulation or (2) the regulation is inconsistent with the statute under which it is promulgated.").

overwhelmingly drove vehicles over 10,000 pounds and drove noncommercial vehicles only on a "few occasions"; court conceded that a factual scenario where "at all times," plaintiffs drove vehicles under 10,001 pounds would support a different result); Tidd v. Adecco USA, Inc., No. 07-11214, 2008 WL 4286512, at ** 3-4 (D. Mass. Sept. 17, 2008) (finding a "more sensible" approach to subjecting an employer to one body of regulations as to some of its drivers and another regulatory regime as to others was an "either-or" interpretation).  In considering the failure of the court in Tidd  to include "any discussion of the TCA [in] its analysis" the court in Brooks stated:

> [that] meant . . . the court was blind to Congress' recent approval of precisely this dual regime.  Starting in June 2008, all employers in the motor carrier industry were required to distinguish for purposes of compensation between employees who operated light vehicles and those operating commercial vehicles.

Brooks, 620 F. Supp. 2d at 200-03.

Frito-Lay relies heavily upon Mayan in arguing that an individual employee's activities are irrelevant.  Defendant contends that the facts in Mayan are indistinguishable from the instant case.  In Mayan, a group of delivery drivers alleged their employer failed to pay them OT compensation in violation of the FLSA and the PMWA.  The employer argued that § 31502 of the MCA exempted it under the FLSA from providing OT compensation.  The employer in that case had a fleet of approximately one hundred delivery trucks - approximately one-third of which had a GVWR of at least 10,001 pounds, and two-thirds had a GVWR of less than 10,001 pounds. The type of vehicle a driver operated on a given day depended on the size, weight, and other characteristics of his delivery load, over which the employer no control.  Each driver was trained to operate all vehicles in the employer's fleet, because on a given day, all drivers were subject to

driving a vehicle weighing more than 10,000 pounds or 10,000 pounds or less.  <u>Mayan</u>, 2009 WL
3152136, at *1.

In <u>Mayan</u>, the district court considered whether the SAFETEA-LU altered which motor
carrier employees were properly categorized as exempt under the FMCE.  The court focused on
the plain language of the SAFETEA-LU statute and concluded that SAFETEA-LU only altered
which employers would be considered motor carriers, and made no changes to the definition of
employees under the law.  As a result, the court determined that the employee plaintiffs
continued to be covered by the FMCE after the enactment of SAFETEA-LU, and were not
entitled to any OT compensation under either the FLSA or the PMWA, regardless of the size of
the trucks they drove.

In <u>Mayan</u> the court noted that few courts that had considered the issue at that time, but of
those that had, the majority of courts ruled inapposite to the court's holding in <u>Mayan</u>.[18]  The
majority of courts considered both the employer's status as a motor carrier and the character of
the employee's job responsibilities.  <u>See</u> <u>Miller v. Prof'l Transp., Inc.</u>, No. 3:09-cv-0111, 2010
WL 3398935, at *3 ("'[a]fter the passage of SAFETEA-LU, then, many employees who were
previously exempt under the prior definition of 'motor carrier' lost their exempt status because
they did not operate 'commercial motor vehicles.''") (quoting <u>Tews</u>, 592 F. Supp. 2d at 1344);
<u>Dalton</u>, 2010 WL 1325613, at *4 (finding employee drivers exempt where employees were
responsible for driving different vehicles at any given time and majority of trucks actually driven
by employees weighed more than 10,000 pounds); <u>Scott</u>, 2009 WL 3561301, at *7 (finding "as a

---

[18] <u>See</u> <u>Mayan,</u> 2009 WL 3152136, at *7 n.9 ("the majority of district courts that have considered this issue have
ruled that a motor carrier employee is not exempted if his or her duties do not affect commercial motor vehicles")
(citing <u>Tews</u>, 592 F.Supp.2d at 1343-46; <u>Veliz</u>, 2008 WL 4911238, at **3-4 (same); <u>Vidinliev</u>, 581 F. Supp. 2d at
1291-93 (same); <u>Musarra v. Digital Dish, Inc.</u>, 454 F. Supp. 2d 692, 701 n.19 (S.D. Ohio 2006) (stating the same in
<i>dicta</i> ); <u>but see</u> <u>Collins v. Heritage Wine Cellars, Ltd.</u>, No. 07-CV-1246, 2008 WL 5423550, at  **19-20 (N.D. Ill.
Dec. 29, 2008); <u>Tidd</u>, 2008 WL 4286512, at  **1-4.

result of this amendment [to the definition of a motor carrier under 49 U.S.C. § 31132], motor carriers operating vehicles of 10,000 pounds or less designed to transport eight or less passengers were no longer exempt from paying their employees overtime under the FLSA."); Songer v. Dillon Res., Inc., 636 F. Supp. 2d 516, 523 (N.D. Tex. 2009) ("[I]t is well settled that 'it is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.'") (quoting Morris, 332 U.S. at 431); Horn v. Digital Cable & Commc'ns, Inc., No. 1:06 CV 325, 2008 WL 7140826, at *4 (N.D. Ohio Nov. 18, 2008) (finding "as a result of SAFETEA-LU, only those employees driving vehicles weighing over 10,000 pounds were subject to the authority of the Secretary of Transportation and eligible for the exemption."); Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266, 273 (S.D. N.Y. 2008) ("Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and employees' activities.") (citing 29 C.F.R. § 782.2(a) and noting the DOL's interpretive guidance regarding the FMCE is "entitled to respect to the extent that it has the 'power to persuade'") (quoting Christensen v. Harris Cnty, 529 U.S. 576, 587 (2000)); Morrison, 474 F. Supp. 2d at 1309 (finding that the jurisdiction of the Secretary of Transportation extends "'only to drivers who reasonably could be expected to make one of the carrier's interstate runs. . . . '") (quoting Garcia v. Pace Suburban Bus Serv., 955 F. Supp. 75, 77 (N.D. Ill. 1996)).

This court finds persuasive the rationale of the majority of other district courts which addressed the issue raised here and concludes that under SAFETEA-LU an employee's activities are considered in determining whether or not he or she is subject to the authority of the Secretary of Transportation and therefore exempt under the PMCE from OT compensation requirements of

the PMWA. Post-SAFETEA-LU, but pre-TCA, an analysis of each individual employee's activities is required to determine whether an employee was subject to the jurisdiction of the Secretary of Transportation. With the exception of Cerutti, the record is not sufficiently developed for the court to reach any conclusion about whether plaintiffs never had to drive a truck with a gross vehicle weight over 10,000 pounds or whether they had some responsibility to do so. Except for Cerutti, who the parties agreed drove a truck with a GVWR of more than 10,000 pounds, defendant did not carry its burden on partial summary judgment on this issue for the period from April 26, 2006 until the date of the enactment of the TCA on June 6, 2008. Summary judgment will be granted in favor of defendant on this issue only with respect to the claim of Cerutti.

### c. **PMCE After June 6, 2008**

As discussed above, on June 6, 2008, the TCA restored the jurisdiction of the federal Secretary of Transportation over employees of motor carriers who drive vehicles with a GVWR of less than 10,001 pounds. The impact of this change upon plaintiffs was to restore their exempt status under the PMCE, while their nonexempt status under the FMCE was maintained due to a note providing that employees driving vehicles under 10,001 pounds remained covered under the OT compensation provisions of the FLSA. As noted *supra*, the PMCE provides in relevant part:

> (b) Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act . . .
>
>> (7) Any employe of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. § 3102(b)(1) and (2) (relating to requirements for qualifications, hours of service, safety and equipment standards).

43 PA. CONS. STAT. § 333.105(b)(7) (emphasis added).

As a matter of statutory construction, this court applying Pennsylvania law is bound to follow the law the Pennsylvania legislature has enacted. An interpretation of a Pennsylvania statute begins with the text of the statute. 1 PA. CONS. STAT. § 1921(b)("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit."); In re Barshak, 106 F.3d 501 (3d Cir. 1997) (court of appeals cannot rewrite a Pennsylvania statute); Ario v. Ingram Micro, Inc., 965 A.2d 1194 (Pa. 2009). The Court of Appeals for the Third Circuit stated in Barshak: "[W]e rule on the basis of what the law is rather than what a party wishes it to be." Barshak, 106 F.3d at 506.

Here, the plain language of the PMCE unambiguously indicates that any employee over whom the federal Secretary of Transportation has the power to establish qualifications and maximum hours of service is exempt from both the minimum wage and OT provisions of the PMWA. This court cannot circumvent the PMWA by adding a note like that added in the TCA with respect to the applicability of the FLSA. See Id. ("We are not free to ignore the clear language of a Pennsylvania statute merely because by rewriting the statute we arguably would act consistently with a legislative policy.").

With respect to the FMCE, the exemption is based upon the jurisdiction of the Secretary of Transportation, i.e., "any employee with respect to whom the [Secretary of Transportation] has power to establish qualifications and maximum hours of service" pursuant to the provision of section 31502 of Title 49. 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502(b)(1) (employees of a motor carrier). The FMCE, however, is impacted by the additional provision of § 306(a) and (c) of the TCA, which carved out a limitation under the FLSA for the OT compensation exemption, providing in relevant part:

> (a) APPLICABILITY FOLLOWING THIS ACT. --
> Beginning on the date of enactment of the Act [the TCA],
> section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C.
> 207) shall apply to a *covered employee* notwithstanding section
> 13(b)(1) of that Act (29 U.S.C. 213(b)(1) [the FMCE].

Pub. L. No. 110-244, 122 Stat. 1572 § 306(a) (emphasis added).  The phrase "covered employee" is defined in the TCA as an individual:

> (1) who is employed by a motor carrier or motor private carrier
>     (as such terms are defined by section 13102 of title 49,
>     United States Code, as amended by section 305);
> (2) whose work, in whole or in part, is defined-
>     (A) as that of a driver, . . .; and
>     (B) as affecting the safety of operation of motor vehicles
>     weighing 10,000 pounds or less in transportation on public
>     highways in interstate or foreign commerce, . . . .

Id.  § 306(c)(1), (2)(A)(B).  This additional limitation is not applicable to the PMCE because an employee's status under the PMCE turns solely on the jurisdiction of the Secretary of Transportation.  Therefore, upon enactment of the TCA, plaintiffs were once again exempt under the PMCE, even though they may not be exempt under the FMCE.  As a matter of Pennsylvania statutory construction, federal courts must apply the Pennsylvania law and cannot change it to reflect perceived legislative policy.  Barshak, 106 F.3d at 506.  After June 6, 2008, the date of the enactment of the TCA, the PMCE applies to plaintiffs because that law restored their status as employees who were subject to the authority of the Secretary of Transportation.  As a result, they fall within the statutory language of the PMCE.  To the extent the Pennsylvania legislature intends the PMCE to follow the FMCE, the Pennsylvania legislature must change Pennsylvania law to include the provisions of § 306(a) of the TCA.  This court cannot do so.

### 3.    Fluctuating Workweek

Frito-Lay argues that even if plaintiffs were found to be nonexempt employees under the PMWA for all or part of the limitations period, it properly compensated them for all OT hours

worked under the FWW method.  Frito-Lay maintains the FWW method is permissible under the

PMWA, pursuant to the PMWA regulation set forth in 34 Pa. Code § 231.43(d).  To calculate

OT on the salary portion, Frito-Lay utilizes the federal regulation set forth in 29 C.F.R. §

778.114.[19]

Frito-Lay maintains the FWW method is utilized in nearly every state, including

Pennsylvania.  Defendant alleges that under the FWW method an employee's "regular rate" for

purposes of calculating OT fluctuates on a weekly basis based upon the actual number of hours

worked during a workweek, as opposed to the standard forty hours.  Defendant divides the

weekly salary by the total number of hours worked, resulting in a "regular rate" that is

considered the straight-time compensation for all hours worked during that week.

With respect to commissions, the parties agree that plaintiffs receive a salary plus

commissions.  Frito-Lay alleges with respect to a nonexempt employee who receives

commissions on a weekly basis, the federal regulations require that commissions be added to the

---

[19] 29 C.F.R § 778.114,  related to the federal method of calculating OT under circumstances where an employee is paid a fixed salary for fluctuating hours, provides in relevant part:

> (a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a).

employee's other earnings for that week for purposes of determining the employee's regular rate. 29 C.F.R. §§ 778.118, 778.119.  It relies upon <u>Lance v. Scotts Lawn Service, Inc.</u>, No. 04-5270, 2005 WL 1785315, at *18 (N.D. Ill. July 21, 2005) (rejecting the plaintiff's argument that commissions are not included in determining an employee's regular rate under the FWW method), and <u>Perez v. Radioshack Corp.</u>, No. 02-cv-7884, 2005 WL 3750320, at **18-19 (N.D. Ill. Dec. 14, 2005), as instances where these regulations have been applied to employers using the FWW method.

Frito-Lay argues it properly calculates plaintiffs' OT compensation by including their base salary and any commissions attributable to that week in calculating the regular rate. Thereafter, Frito-Lay calculates the employees' OT compensation rate by dividing the "regular rate" in half, resulting in a premium rate that an employee will receive for all hours worked over forty hours.  Frito-Lay argues the FWW method complies with the FLSA's overtime requirement because the employee's weekly salary is intended to compensate him or her for all hours worked in a workweek – including OT hours.  It concludes that because plaintiffs receive "time" for each hour worked by receiving a weekly salary, they are only entitled to the "and a half" of their regular rate for hours worked in excess of forty.

Frito-Lay asserts that the FWW method is permissible under the PMWA.  Frito-Lay relies upon <u>Evans v. Lowe's Cos., Inc.</u>, Civ. A. No. 3:03-cv-0438, 2004 U.S. Dist. LEXIS 8335 (M.D. Pa. April 29, 2004); <u>Friedrich v. U.S. Computer Systems, Inc.</u>, Civ. A. No. 90-1615, 1996 WL 32888 (E.D. Pa. Jan. 23, 1996); and a Pennsylvania's Labor Law Compliance Division ("PLLCD")[20] opinion letter, dated February 26, 2003, allegedly predicting that use of the FWW

---

[20] The PLLCD is the division of the Pennsylvania Department of Labor & Industry that interprets and enforces Pennsylvania's laws regulating the employer and employee relationship.  <u>See</u> http://www.portal.state.pa.us/portal/server.pt/community/labor_law_complainace/10515

method would not violate the PMWA. Defendant concludes that courts[21] and administrative agencies in Pennsylvania which have opined on the issue whether the FWW method is a permissible method of calculating overtime have uniformly upheld its use. Frito-Lay argues that, in order to be in compliance with the PMWA, an employer need only meet the requirements under subsection (b) or subsection (d) of section 231.43, but not both. It avers that it complies with subsection (d).

Plaintiffs argue that defendant's FWW method of compensating plaintiffs for OT work is not permitted by the PMWA because it does not comport with the general OT rule of the PMWA set forth in 34 PA. CODE § 231.41. Plaintiffs are not paid a flat sum for a day's work or paid a flat sum for a particular job, pursuant to 34 PA. CODE § 231.43(b). Plaintiffs agree that defendant's method of paying OT compensation at the rate of one-half plaintiffs' regular rate of pay is permitted under section 231.43(b), but disagree that it is permitted under section 231.43(d)(3). Plaintiffs argue that under section 231.43(d)(3), Frito-Lay is obligated to pay plaintiffs at the rate of one and one-half of their regular pay. Plaintiffs rely upon Friedrich, 1996 WL 32888 at **8-11.

Plaintiffs assert defendant does not comport with the requirements of section 231.43(d)(3) because the basic rate is not established by agreement or understanding before the work is commenced. The parties agree that commissions are factored into plaintiffs' basic rates of pay. Because the commissions are not paid until after the fact, plaintiffs argue that defendant

---

[21] In Evans, the court considered whether the employer's compensation plan was appropriate with respect to the liability exception enumerated in 34 PA. CODE § 231.43(d). Evans, 2004 U.S. Dist. LEXIS 8335, at **10-15. In Friedrich, the employer paid employees a bi-weekly salary and compensated them for any hours worked in excess of forty in a workweek using a FWW OT compensation rate. The OT rate was calculated by dividing the employee's weekly salary by the number of hours worked that week and then dividing the resulting hourly rate in half. The court denied the defendant's summary judgment motion, finding a disputed genuine issue of material fact existed with respect to whether the employees "understood or agreed" to the employer's compensation plan and its method of computing OT compensation, required by 34 PA. CODE § 231.43(d). Friedrich, 1996 WL 32888 at *14.

is not in compliance with the requirement that the basic rate of pay is established before the work is completed. Although plaintiffs' salaries are consistent from week to week, their basic rate of pay varies depending on their commissions.

Plaintiffs rely upon Turner v. Mercy Health System, 2010 Phila. Ct. Com. Pl. LEXIS 146 Mar. 10, 2010) (holding that an eight-hour a day, eighty-hour a week method of paying OT to employees is unlawful under Pennsylvania law) for the proposition that section 231.43(7)(d) must be read by its plain meaning. In analyzing the plain language of 34 PA. CODE § 231.43(7)(d), the state trial court stated:

> Upon review of 34 Pa. Code § 231.43(d) in its entirety, there is no exception to the definition of workweek, nor is there an exception to the requirement that employees who work more than 40 hours during the workweek are entitled to at least one and a half times their regular rate. The fact that there is an agreement between Turner and his class members and Defendants that sets forth a regular rate and sets forth the 8-80 Period does not mean that Defendants are not required to pay one and a half times the regular rate to employees who work more then [sic] forty hours during the workweek. 34 Pa. Code § 231.43(d) does not permit employers and employees from agreeing to violate the MWA. In fact, the language of 34 Pa. Code § 231.43(d) makes it clear that overtime pay for hours work in excess of forty in a workweek is required. Defendants' arguments must fail.

Turner, 2010 Phila. Ct. Com. Pl. LEXIS 146, at *13.

In Pennsylvania, an employer shall be deemed to not have violated the OT compensation provisions of the PMWA if the employer meets provisions of 43 PA. CODE § 231.43, which provides in relevant part:

> **§ 231.43. Regular rate.**
>
> For purposes of these §§ 231.41--231.43 (relating to overtime pay), the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to or on behalf of the employee, but it shall not be deemed to include the following:
> . . .

(7) Extra compensation provided by a premium rate paid to the employee in pursuance of an applicable employment contract or collective bargaining agreement for work outside of the hours established in good faith by the contract or agreement as the basic, normal or regular workday not exceeding 8 hours or workweek not exceeding the maximum workweek applicable to the employee under § 231.41 (relating to rate), where the premium rate is not less than 1 1/2 times the rate established in good faith by the contract or agreement for like work performed during the workday or workweek.

(b) If the employee is paid a **flat sum** for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job **and if he receives no other form of compensation for services**, his regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to **extra half-time pay** at this rate for hours worked in excess of 40 in the workweek.
. . .

(d) No employer may be deemed to have violated these §§ 231.41--231.43 by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 if, under an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under § 231.41:
. . .

(3) Is computed at a rate not less than **1 1/2 times** the rate established by the agreement or understanding as the basic rate to be used in computing overtime compensation thereunder; and if the average hourly earnings of the employee for the workweek, exclusive of payments described in subsection (a)(1)--(7), are not less than the minimum hourly rate required by applicable law and if extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate.

34 Pa. Code § 231.43(b), (d)(3) (emphasis added).

Section 231.43(d)(3) clearly requires that OT pay be computed at "1½ times" the rate established by the agreement or understanding.  Id.  Under a plain reading of that regulation, Frito-Lay cannot have it both ways.  Frito-Lay concedes that it paid plaintiffs pursuant to 34 Pa. Code § 231.43(d).  If so, it cannot comply with that section without paying plaintiffs at an OT rate of one and one-half times the plaintiffs' regular rate.  Therefore, the court need not predict whether Pennsylvania courts would recognize the FWW method of OT payment.  Similarly, the court need not consider communications from the Pennsylvania Department of Labor and Industry, discussing whether Pennsylvania law would recognize the FWW.

**IV.    Conclusion**

Prior to April 26, 2006, the parties do not dispute that plaintiffs were exempt from the PMWA under the PMCE.  It is also undisputed that as of April 26, 2006, all plaintiffs, with the exception of Cerutti, drove Frito-Lay vehicles with a GVWR of 10,000 pounds or less.  It, however, is unclear, whether those plaintiffs were subject to being required to drive a vehicle with a GVWR over 10,001 pounds.  Therefore, for the period from April 26, 2006 until June 6, 2008 – the date of enactment of the TCA – discovery may be needed to permit the record to be fully developed concerning whether those employees were subject to the exemption.  Summary judgment must be granted in defendant's favor at least against Cerutti because it is undisputed she drove trucks over 10,001 pounds.[22]

For the period after the enactment of the TCA – June 6, 2008 – the PMCE applies to plaintiffs because that law restored their status as employees who were subject to the authority of the Secretary of Transportation.  They fall within the statutory language of the PMCE.  To the

_____

[22] Plaintiffs' allegation that defendant failed to record accurately all the hours worked by plaintiffs was not addressed by defendant and is not addressed in this opinion.

extent the Pennsylvania legislature wants to follow the FLSA exemption set forth in § 306 of the TCA, the Pennsylvania legislature must change the law. This court cannot legislate.

With respect to whether Frito-Lay's method of compensating plaintiffs according to the FWW would be lawful in Pennsylvania, the court finds this question is irrelevant because Frito-Lay's OT payment to plaintiff in the amount of one-half times their regular pay for hours worked over forty in a week does not comport with either 34 PA. CODE § 231.43(b) or (d)(3).

Frito-Lay's Motion must be denied in part and granted in part because: 1) the PMCE incorporates amendments to the federal MCA relating to employees over whom the Secretary of Transportation has authority to regulate qualifications and maximum hours of service, and consequently there is a truck weight requirement for the Pennsylvania exemption to apply from August 10, 2005 through June 5, 2008, but subject to a safe harbor provision; 2) with the exception of Cerutti, genuine issues of material fact exist about whether each plaintiff was subject to performing duties qualifying him or her to be an employee subject to the jurisdiction of the Secretary of Transportation and therefore exempt under the PMCE; 3) after June 6, 2008, the Pennsylvania exemption was restored because the Secretary of Transportation regained authority over the qualifications and maximum hours of service of employees of motor carriers who drive trucks with a GVWR of 10,000 pounds or less; and 4) as a matter of law, defendant's method of compensating plaintiffs for OT hours does not comport with the requirements of either 34 PA. CODE § 231.43(b) or (d)(3).

Dated: March 28, 2011                                          By the court,


                                                              /s/  JOY FLOWERS CONTI
                                                              Joy Flowers Conti
                                                              U.S. District Judge